**MARK TWAIN BANK, Respondent,**

v.

**Robert L. JACKSON, Jr., and Jim Levitt, d/b/a McJaclev Associates, et al., Appellants.**

**No. WD 49084.**

Missouri Court of Appeals, Western District.

July 11, 1995.

Charles W. Fairchild, Fairchild & Fairchild, P.C., Kansas City, for appellants.

Robert A. Kumin, Kansas City, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and ELLIS, JJ.

ULRICH, Presiding Judge.

Robert L. Jackson and James J. Levitt, d/b/a McJaclev Associates, appeal the judgment following a jury verdict in favor of the Mark Twain Bank (Bank) for $10,300 in damages and $16,000 in attorney fees. Bank filed suit against appellants asserting a claim for late charges owed on an $850,000 loan to appellants and another partner. The issues presented are whether Bank waived the claimed late charges, and whether the trial court erred in refusing appellants' offered affirmative defense instruction of accord and satisfaction.

The judgment is affirmed.

McJaclev Associates (Partnership) is a Missouri general partnership consisting of three partners, Robert L. Jackson Jr., James J. Levitt, and Lynn McCarthy. Bank made a series of loans to Partnership beginning in 1986. The loans were used to purchase loans from and infuse capital into the First National Bank of Shawnee Mission, Kansas, a bank owned by Partnership. The purchased loans and their underlying security became collateral for the Partnership loans obtained from Bank.

The various loans extended by Bank to Partnership were merged into a single note in 1988.[1] The principal amount of the 1988 note was $625,000, with accrued interest and principal reduction payable quarterly. The note provided for a 5% late charge and attorney fees in the event of a collection action. It also provided a specific manner for applying loan payments:

> Each payment I make on this Note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce unpaid interest earned, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this form.

Bank was required by regulation to publish a "Call Report" at the conclusion of each quarter. The report included a list of all

---

1. The loan was extended on May 15, 1989, for one year on the same terms and conditions of the 1988 note.

delinquent loans held by Bank. If delinquent loans appeared on the Call Report, Bank adjusted for the loans appearing on the list or set aside reserves to address possible default. Bank classified the partnership loans as problem loans causing it to set aside more money in the reserve and to lower it's profitability. All payments by Partnership were made after their respective due dates and grace periods and the late charge provision within the note was applicable. Loan payments, however, were always made before the issuance of the quarterly Call Report. Despite authorization by the terms of the loan agreement to apply payments received to late charges, they were applied to accrued interest and principal first. Such was Bank's normal business practice. Had Bank applied scheduled loan payments received from Partnership first to an assessed late charge and then to interest and principal, the amount then owed would not have been satisfied and the loan would have been published on the Call Report as a delinquent loan.

In 1990, the loan was extended for two years (May 15, 1990 to May 15, 1992). The 1990 two-year loan extension documents incorporated most of the terms and conditions of the 1988 note including the term that attorney fees were assessable should collection proceedings be required. The 1990 Note Extension/Modification Agreement, however, significantly changed two loan provisions. Quarterly payments of $10,000 plus accrued interest increased to $34,335, which included both interest and principal. Secondly, the late charge provision changed from five percent (5%) after a fifteen day grace period to ten percent (10%) after a ten day grace period.

In early 1992, Bank sent payment statements to Partnership reflecting late charges on quarterly loan payments received after the due date and the ten day grace period. Bank also sent Partnership a letter on March 31, 1992, asserting late charges. Upon receipt of the three remaining loan payments, Bank applied each payment to accrued interest and then principal.

The last payment was due and owing on May 15, 1992. The bank quarter ended June 30, 1992. In late May or early June 1992, Bank discussed the final payment with Partnership. Partnership disputed the claimed late charges appearing on invoices to Partnership but agreed to pay the remaining accrued interest and unpaid principal of $34,342.16 on June 30, 1992. Bank did not agree that $34,342.16 would be in full satisfaction of the debt.

Partnership, by Mr. Levitt's wife, submitted a check on the Levitts' personal account in the sum of $34,342.16 to Bank, on the back of which she had written "Paid in Full." She delivered the check to Bank in an envelope bearing the name of the Vice President of the branch location. Several hours before the check was delivered to Bank, Bank sent a facsimile to Partnership listing late charges due. Upon receipt of the check, Bank negotiated it and applied the proceeds to accrued interest and unpaid principal. The amount of the check did not include the total remaining amount owed for interest, and Partnership sent another check for additional interest owed on August 17, 1992.

## I.

Partnership claims the trial court erred in overruling its motion for directed verdict at the close of plaintiff's evidence and again at the close of all the evidence, asserting Bank waived the late charges. Partnership asserts that Bank (a) expressly admitted waiving all late charges from 1986 to 1990; (b) Bank's practice of applying payments first to accrued interest and then to unpaid principal contravened the terms of the loan agreement requiring all charges be paid before satisfying accrued interest and reducing the principal; (c) Bank's internal loan history documents established a waiver of late charges; and (d) Bank's practice of dealing with the parties and its conduct manifested its intent to waive late charges.

■ The test of whether a directed verdict is proper in a given case is whether reasonable minds could differ on the proper outcome of the case, viewing the evidence and all reasonable inferences drawn from that evidence in a light most favorable to the plaintiff. *Hogan v. Armstrong World In-*

*dus.,* 840 S.W.2d 230, 234 (Mo.App.1992). Thus, a defendant is entitled to directed verdict if reasonable and honest persons could only have found in the defendant's favor. *White v. James,* 848 S.W.2d 577, 579 (Mo. App.1993).

■ Waiver is the intentional relinquishment of a known right. *Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384, 386 (Mo. banc 1989); *Heintz v. Swimmer,* 811 S.W.2d 396, 399 (Mo.App.1991). Partnership alleges that Bank expressly waived the late charges on the loan from 1986 until 1990, and consequently, the waiver constituted a full and complete waiver through the entire life of the loan. It relies on *Consolidated Elec. Coop. v. Employers Mut. Liab. Ins. Co.,* 106 F.Supp. 322 (E.D.Mo.1952), for the suggestion that once a waiver attaches, it cannot be revoked. *Id.* at 332. This argument, however, is without merit. In 1990, the parties executed a new agreement, the Note Extension/Modification Agreement that extended the 1988 loan for an additional two years. While the extension incorporated most of the terms and conditions of the 1988 note, some provisions were significantly modified, including the quarterly payment amount and late charge provision. The 1990 extension was a new agreement between the parties, and any waiver of rights under the 1988 note was irrelevant to the 1990 agreement.

■ Partnership next argues that Bank impliedly waived its contract rights to late charges by its conduct. For waiver to be implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right. *Brown,* 776 S.W.2d at 386–387; *Heintz,* 811 S.W.2d at 399. "To rise to the level of a waiver, . . . actions must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of . . . conduct is possible." *Waterwiese v. KBA Const. Managers, Inc.,* 820 S.W.2d 579, 585 (Mo.App.1991).

■ Partnership contends that Bank waived late charges by consistently and continually applying loan payments from Partnership to interest and principal before applying it to late charges as required by the 1988 note and 1990 extension agreement. While Bank admitted that applying loan payments in this manner was its normal business practice, evidence at trial suggested that Bank did not intend to renounce or waive late charges. Notices with assessed late fees and quarterly statements, including separate entries for principal, interest, and late charges were routinely sent to Partnership during the pendency of the loan. At least three letters were sent from Bank to Partnership including invoices and breakdowns of the late fees. Moreover, various conversations and meetings revolved around the issue of late charges. This conduct does not clearly and unequivocally show a purpose to renounce the contractual right to collect late charges. Viewing all the evidence in a light most favorable to Bank, reasonable minds could not have found only in Partnership's favor. The trial court, therefore, did not err in denying Partnership's motions for directed verdict at the close of plaintiff's evidence and again at the close of all the evidence.

Point I is denied.

## II.

In point two, Partnership claims that the trial court erred in refusing to submit its instruction on the affirmative defense of accord and satisfaction. It argues that the elements of accord and satisfaction were proven to allow submission of the instruction to the jury.

■ "In determining whether an instruction should have been given or withheld based on the evidence presented at trial, the appellate court views all evidence in the light most favorable to submission of the instruction." *Childers v. State Farm Fire & Cas. Co.,* 799 S.W.2d 138, 142 (Mo.App.1990). An improper instruction or failure to instruct when the evidence supports submission constitutes reversible error when the party challenging the mistake has been prejudiced. *Id.*

An accord and satisfaction is an agreement between parties to give and accept something different from that claimed by virtue of the original obligation. *Helton Const. Co., Inc. v. Thrift,* 865 S.W.2d 419, 424 (Mo.App.1993). In order for there to be an accord and satisfaction, the contract elements of offer, acceptance, and consideration must all be present.

*Edgewater Health Care, Inc. v. Health Systems Mgmt., Inc.,* 752 S.W.2d 860, 868 (Mo. App.1988). The trial court concluded that the evidence did not support an instruction for accord and satisfaction because of the lack of consideration. Partnership argues that the elements of accord and satisfaction were met.

■ Generally, a partial payment in full settlement of a debt does not constitute an accord and satisfaction because it is unsupported by consideration. *Helton,* 865 S.W.2d at 424. A bona fide dispute or an unliquidated claim, however, will support an accord and satisfaction. *Edgewater Health Care,* 752 S.W.2d at 868. "[W]here the claim is unliquidated or in dispute, no additional consideration other than partial payment is necessary to support an accord and satisfaction." *Id.*

■ Partnership contends that the final payoff amount of the loan was always in dispute and that partial payment of the disputed amount constituted consideration sufficient to support an accord and satisfaction. Bank demanded final payment of $59,047.72 including remaining principal, accrued interest, and late charges. Partnership disputed this amount and agreed to pay only the remaining principal and interest in the amount of $34,342.16. It asserts that it made a partial payment of $34,342.16 in full satisfaction of the debt. The payment, however, was for no more than Partnership admittedly owed. The amount withheld was for the exact amount of the disputed sum, the late charges. No part of the disputed amount was paid, therefore, there was no new consideration to support an accord and satisfaction. *See American Samax Co. v. Cliff Packer Chevrolet, Inc.,* 588 S.W.2d 529, 531 (Mo.App. 1979) (where basic claim is undisputed and check delivered and cashed by plaintiff was no more than defendant admittedly owed, there was no partial payment of a disputed amount).

Point II is denied.

The judgment of the trial court is affirmed.

All concur.