Edith H. **WOOLSEY**, et al., Appellants,

v.

The **BANK OF VERSAILLES**,
Respondent.

No. WD 52935.

Missouri Court of Appeals,
Western District.

July 29, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 2, 1997.

Application to Transfer Denied
Oct. 21, 1997.

---

P. Pierre Dominique, J. Christopher Spangler, Wesner, Kempton, Russell and Dominique, Jefferson City, for respondent.

John S. Pletz, Venters, Pletz & Reed, Jefferson City, for appellants.

Before ELLIS, P.J., and LOWENSTEIN and HOWARD, JJ.

ELLIS, Presiding Judge.

On December 12, 1989, Edith and Carl Woolsey, wife and husband, their son, James Woolsey, and their granddaughter, Carla Saunders, and her husband, Thomas Saunders (collectively the Borrowers) borrowed $20,000 from the Bank of Versailles (the Bank). All Borrowers were present and signed the $20,000 variable rate note. In addition, all five persons executed a deed of trust conveying eighty acres of land in Morgan County to Kenneth O. McCutcheon as Trustee as security for payment of the note. The Bank was named the beneficiary in the deed of trust. David Baumgartner, chief executive officer and cashier for the Bank, represented the Bank in the transaction.

The loan proceeds were for the benefit of James Woolsey and Thomas Saunders, who owned a business known as J.T. Construction Company. Carla Saunders was responsible for the day to day affairs of the business, including contract management, receipt collection, and paying the bills. J.T. Construction was operated out of the Saunders' home at 12817 East 47th Street # 28 Locust, in Independence, Missouri. At the loan closing, the parties agreed that all correspondence, including the payment booklet, would be sent to the Borrowers at the 47th Street address, that Carla would act as the liaison between the Bank and the Borrowers, and that she would be responsible for making the monthly loan payments.

The loan payments, due on the twelfth of each month, were delinquent from the inception of the loan. When the payments became 30 to 60 days overdue, Baumgartner would

contact Carla by phone at her 47th Street address. If he could not reach her by phone, he would correspond by mail to that address. When the payments were more than 60 days overdue, Baumgartner would call continuously until the Bank received some kind of payment. He would tell Carla that if she "brought her payments up and kept them up," "things would be okay on the note" ... however, "anything over 60 days was always a problem," and "if it got much over 60 days, [he] would have to start to foreclose." The last payment made by J.T. Construction was dated April 15, 1991. Thereafter, payments were either made by Margaret Reiss,[1] Jim Woolsey, or debited from Edith's Woolsey's account with the Bank. Edith Woolsey closed her account in May of 1992.

In early July, 1992, Baumgartner sent the Borrowers a report reflecting the status of the loan as of July 7, 1992. The report indicated the payments were 55 days delinquent and, via a hand-written message, advised the Borrowers the Bank would foreclose if the loan was not current by August 1, 1992. Thereafter, in a letter dated July 30, 1992, Baumgartner advised the Borrowers that the Bank was accelerating the note:

> This will notify you that you have failed to make the installment payments on your promissory note from May 12, 1992 to date. Therefore, you are in default on this note and you are hereby advised that we are declaring the unpaid balance on the note to be immediately due and payable.
>
> \* \* \* \* \* \*
>
> Unless you pay the unpaid balance and accrued interest on this note before August 10, 1992, we will have no alternative but to instruct the trustee named in the deed of trust securing your note to collect same by foreclosure on the property.

Carla informed each of the Borrowers of the impending foreclosure. On August 4, 1992, Carla contacted Baumgartner to discuss the acceleration letter. On August, 7, 1992, the Borrowers mailed the Bank two checks: one from James Woolsey in the amount of $544.16, and one from Margaret Reiss in the amount of $316.66. These payments brought

them current through July. However, they were the last payments made by the Borrowers prior to foreclosure.

Sometime during late July or early August of 1992, Thomas and Carla Saunders moved from 47th Street to 11013 East 34th Street. By October of 1992, J.T. Construction had gone out of business. Carla knew, as of that time, that the company would be unable to make its monthly payments on the loan. By letter dated October 20, 1992, the Bank again notified the Borrowers that they were in default on the note and that, as a result, the unpaid balance of $17,086.20 was "immediately due and payable." This letter, mailed to the 47th Street address, was returned undelivered because no forwarding address was on file with the post office. Thereafter, by letter dated November 6, 1992, entitled "Notice of Overdue Loan Payment (First Default)", the Bank advised the Borrowers that the loan payments were 85 days overdue and that the remaining balance of $17,153.39 was due in full by November 26, 1992. This letter, also mailed to the 47th Street address, was also returned for lack of a forwarding address.

In late October, 1992, Baumgartner sent the Trustee a copy of the acceleration letter and requested that he begin foreclosure proceedings. At some point, the Trustee received a copy of the note and the deed. Attached to the note was a post-it note reflecting the 47th Street address. On November 19, 1992, the Trustee mailed to each borrower, individually, a notice of the impending foreclosure. All of the notices were sent by certified mail to the 47th Street address and all of them were returned undelivered for lack of a forwarding address. A Notice of Trustee's Sale was published in the local newspaper on four separate dates. At the Trustee's Sale on December 21, 1992, the property was purchased by Blaine and Gladys Silvey (the purchasers) for $17,800.

On February 17, 1995, the Borrowers brought suit against the Bank, the purchasers and the Trustee in the Circuit Court of Morgan County. Prior to trial, the Trustee was awarded summary judgment on the

---

1. Margaret Reiss is Carla Saunders' mother.

claim against him for breach of fiduciary duty. A bench trial was held on May 20 and 21, 1996. At the close of their evidence, the Borrowers elected to pursue their claims for monetary damages against the Bank for wrongful foreclosure, rather than an equitable remedy against the purchasers.[2] The Bank presented no evidence at trial. Thereafter, the trial court entered judgment in favor of the Bank, finding: (1) the Borrowers directed the Bank to send all correspondence, including the payment book, to the 12817 East 47th, # 28, Independence, Missouri, 64055 address; (2) no lulling of Borrowers occurred; (3) the Bank did not waive its right to timely payments; (4) the note was properly accelerated; (5) the loan was five months delinquent at the time foreclosure took place; and, (6) there was no collusion or fraud in connection with the sale. Borrowers bring three points on appeal.

■ On review of a court-tried case, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). We accept as true the evidence, and all reasonable inferences drawn therefrom, favorable to the trial court's judgment and disregard all evidence to the contrary. *United Siding Supply, Inc. v. Residential Improvement Servs., Inc.*, 854 S.W.2d 464, 466 (Mo.App. W.D.1993). We do not weigh the evidence, determine the credibility of witnesses or resolve facts. *Davis v. Missouri Div. of Family Servs.*, 907 S.W.2d 280, 281 (Mo.App. W.D.1995).

■ In their first point, Borrowers challenge the court's finding that the Bank mailed the foreclosure notices to the Borrowers' "last known address," in compliance with § 443.325.3.[3] Borrowers contend the 47th Street address was not the "last known address" for all Borrowers, but was used by the Bank for its own convenience. Instead, Borrowers argue that Edith Woolsey's home address of 10606 E. 34th Street was her "last known address," because the Bank had record of this address on both the loan application and the note, and used this address to send her information regarding her checking and savings accounts. Borrowers reason that since the Bank did not mail Edith Woolsey's copy of the foreclosure notice to her "last known address," the foreclosure did not comply with the notice requirement set forth in § 443.325.3. Moreover, Borrowers argue that by mailing Edith Woolsey's notice of foreclosure to the 47th Street address, knowing that it would be returned undelivered, the Bank deprived her of the opportunity to prevent the foreclosure sale.

■■ The primary purpose of § 443.325.3 is "to require a good faith effort to bring the intended foreclosure sale to the actual notice of the mortgagor, so that he has an opportunity to protect himself." *IPI Liberty Village Assoc. v. Spalding Corners Assoc.*, 751 S.W.2d 120, 124 (Mo.App. W.D.1988); See *Macon–Atlanta State Bank v. Gall*, 666

---

2. Where there has been a wrongful foreclosure, the aggrieved party can either bring "a suit in equity to set aside the sale, or, let the sale stand and sue at law for damages." *Edwards v. Smith*, 322 S.W.2d 770, 776 (Mo.1959).

3. Section § 443.325.3, RSMo 1994, provides:

In the event of foreclosure under a power of sale, the foreclosing mortgagee or trustee shall, not less than twenty days prior to the scheduled date of the sale, cause to be deposited in the United States mail an envelope certified or registered, and with postage prepaid, enclosing a notice containing the information required in the published notice of sale ..., addressed

(1) To each person whose name and address is set forth in any such request recorded at least forty days prior to the scheduled date of sale; and

(2) To the person shown by the records in the office of the recorder of deeds to be the owner of the property as of forty days prior to the scheduled date of foreclosure sale at the foreclosing mortgagee's last known address for said record owner; and

(3) To the mortgagor or grantor named in the deed of trust or mortgage at the foreclosing mortgagee's last known address for said mortgagor or grantor.

(4) Actual receipt by the addressee of the envelope referred to above shall not be necessary to establish compliance with the notice requirements of subsection 3 hereof. Recording of receipt issued by the United States Post Office for certified or registered mail to evidence that said envelope has been delivered by the sender to the United States Post Office shall constitute proof of compliance with notice requirements of subsection 3 hereof.

S.W.2d 934, 939 (Mo.App. W.D.1984). That section requires only that the notice be mailed to the last address of the mortgagor known to the mortgagee. § 443.325.3. Failure to receive the foreclosure notice will not in and of itself condemn the foreclosure sale. *IPI Liberty Village,* 751 S.W.2d at 124.

In this case, Borrowers specifically requested that the Bank mail all correspondence pertaining to the loan to 12817 East 47th Street # 28 Locust, Independence, Missouri. In compliance with the Borrowers' request, the Bank mailed all loan related correspondence and notices to that address.[4] At no time did the Borrowers request that the Bank mail correspondence pertaining to the loan to Edith Woolsey's home address, or the home address of any other Borrower. Nor is there any evidence in the record that the Bank ever did so on its own volition. Finally, there is no evidence that the Borrowers provided the Bank with actual, written notice of the new address to which the correspondence was to be mailed after the Saunders moved from 47th Street.

The Borrowers' reliance on the fact that Edith Woolsey had previously maintained a checking and savings account at the Bank and that the Bank sent her account statements to her at the 10606 E. 34th Street address is misplaced. Edith Woolsey closed her accounts with the Bank in May, 1992. The foreclosure notices were mailed some six months later when the Bank's current, open records listed the 47th street address as the location to which notices and other correspondence were to be sent.

The foreclosure notices were mailed to the address furnished by Borrowers for the purpose of mailing loan related correspondence and, on the record before us, that constituted proper notice to Borrowers' "last known address" under § 443.325.3. The fact that the Borrowers no longer lived at that address does not render the notice ineffective.

§ 443.325.3; *IPI Liberty Village,* 751 S.W.2d at 124. Point denied.

■ In their second point, Borrowers claim the trial court erred in finding that neither a lulling of the buyers, nor a waiver of the Bank's right to timely payments had occurred. Borrowers contend these findings were against the weight of the evidence and a misapplication of the law. Borrowers further argue that the fact that inadequate consideration was received from the Trustee's sale should be considered, as a cumulative factor, in determining whether relief is warranted.

Borrowers first argue the Bank lulled them into a false sense of security that it would not foreclose if they temporarily defaulted on their payments without first contacting them personally in an effort to collect the delinquent payments. Borrowers complain that in October of 1992, the Bank "quit trying to reach them and simply instituted foreclosure without giving [them] notice of its change in position."

■ The theory of lulling applies where the mortgagor is lulled into a belief that payments are not required to prevent a foreclosure, or that payments may be made in a manner different than that stated in the note or deed of trust. *Zdazinsky v. Four Seasons Lakesites, Inc.,* 901 S.W.2d 224, 227 (Mo.App. S.D.1995).[5] "Where the holder of a note induces the debtor, by words or conduct, to believe that a method of payment proposed would not result in foreclosure, the holder cannot invoke the acceleration clause until after the debtor has been given reasonable notice and a reasonable time in which to make the delinquent payments." *Morgan v. Bryant,* 673 S.W.2d 129, 130 (Mo.App. S.D. 1984).

Viewed in the light most favorable to the judgment, the evidence shows that the Borrowers were delinquent in making payments from the inception of the loan. In an effort

4. Including the notice of foreclosure, which was sent by certified mail to each Borrower, individually.

5. In *Zdazinsky,* the Court found the owners had been "lulled" into believing there would not be a foreclosure on the lot due to the suspension of

their payments. In that case, the owners were provided with a letter that expressly stated that payments would be suspended. *Zdazinsky v. Four Seasons Lakesites, Inc.,* 901 S.W.2d 224 (Mo.App. S.D.1995).

to collect payments that were 30 to 60 days past due, Baumgartner called and wrote to the Borrowers. When payments were more than 60 days overdue, he worked even harder to persuade them to bring the payments up to date. In doing so, Baumgartner warned Borrowers from the beginning that the Bank would foreclose if payments were delinquent more than 60 days. On or about July 7, 1992, Baumgartner advised the Borrowers that payments were 55 days delinquent and that foreclosure would be commenced if payments were not brought current by August 1, 1992. Although Borrowers tendered a check bringing them current up through July, 1992, on the date the foreclosure notices were mailed payments for August, September, October and November were all outstanding. Moreover, Baumgartner tried to contact the Borrowers in October and November, but was unable to do so because they left no forwarding address. The trial court did not err in rejecting this claim.

Borrowers next argue the court erroneously found that the Bank had not waived its right to insist on timely payments under the terms of the note. Borrowers contend that the Bank's willingness to accept payments one to three months late indicates that the Bank waived its right to timely payments and, therefore, was not entitled to accelerate the note without first notifying Borrowers of its change in position.

"For waiver to be implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right." *Mark Twain Bank v. Jackson*, 901 S.W.2d 360, 363 (Mo.App. W.D.1995). The conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible. *Id.* (citing *Waterwiese v. KBA Const. Managers, Inc.*, 820 S.W.2d 579, 585 (Mo.App. E.D.1991)).

Borrowers waiver argument must also fail. The July 7th letter timely notified the Borrowers that future delinquencies would result in foreclosure. The Bank's conduct unequivocally reveals an intent to enforce its contractual right to timely payments and to commence foreclosure upon further default. The

trial court did not err in finding that no waiver occurred.

Finally, Borrowers argue the price received for Borrowers' land at the foreclosure sale was inadequate and, in combination with the inadequate notice, lulling, and waiver constitutes sufficient evidence of wrongful foreclosure. In light of our holding that adequate notice of foreclosure was given, that the Borrowers were not lulled into believing the Bank would not foreclose, and that the Bank did not waive its right to timely payments, this argument is without merit. Moreover, a foreclosure sale will not be set aside based on inadequate sales price absent a showing that the sale was fraudulent or lacked competitive bidding. *Boatmen's Bank v. Community Interiors, Inc.*, 721 S.W.2d 72, 77–78 (Mo.App. E.D.1986). Borrowers failed to establish the foreclosure sale suffered from either infirmity. Point denied.

In their final point, Borrowers contest the court's rejection of their claim for damages under the doctrine of prima facie tort. In order to establish a prima facie tort, the plaintiff must prove: (1) an intentional lawful act by the defendant, (2) defendant's intent to injure the plaintiff, (3) injury to the plaintiff, and (4) an absence of, or insufficient justification for defendant's act. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 315 (Mo. banc 1993). Borrowers contend they proved each element of the tort and were, therefore, entitled to an award in their favor.

Borrowers misunderstand the nature of the prima facie tort claim. Prima facie tort is not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories. *Id.* As such, the prima facie tort doctrine cannot be utilized when a recognized tort is otherwise available. *Kiphart v. Community Fed. Sav. & Loan Ass'n*, 729 S.W.2d 510, 517–18 (Mo. App. E.D.1987). In this case, Borrowers had a nominate tort available to them. They alleged and prosecuted a claim for wrongful foreclosure in Count I of their Petition. Consequently, since the conduct they assert established the elements of prima facie tort

is identical to that supporting wrongful fore-closure, Borrowers could not utilize the theory of prima facie tort and the trial court did not err in rejecting their claim. *Id.*

Even assuming, arguendo, that the prima facie tort was a viable cause of action for Borrowers, their claim still fails. This doctrine requires proof of the Bank's actual intent to injure Borrowers. *J.S. DeWeese Co. v. Hughes–Treitler Mfg. Corp.,* 881 S.W.2d 638, 646 (Mo.App. E.D.1994). The plaintiff must show specific, clear-cut, express malicious intent to injure; mere intent to do the act which results in injury is not sufficient. *Kiphart,* 729 S.W.2d at 517.[6] The plaintiff's burden to submit evidence on this element is a heavy one. *Id.* Borrowers failed to meet this burden. The record simply does not support a finding of express malicious intent to injure. Point denied.

The judgment is affirmed.

All concur.

---

6. "Spite or ill-will is necessary to satisfy the requisite intent." *J.S. DeWeese,* 881 S.W.2d at 646.