Richard THOMAS, Appellant,

v.

SPECIAL OLYMPICS MISSOURI,
INC., Respondent.

No. WD 57608.

Missouri Court of Appeals,
Western District.

Sept. 26, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 31, 2000.

M. Corinne Corley, Kansas City, for appellant.

Roger Paul Wright, Blue Springs, for respondent.

Before Presiding Judge HAROLD L. LOWENSTEIN, LAURA DENVIR STITH, and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Judge.

Richard Thomas sued Special Olympics of Missouri, Inc. (Special Olympics), for intentional infliction of emotional distress and prima facie tort based on its refusal to reinstate him as a member of that organization in the fall of 1996. The trial court granted Special Olympics' motion for summary judgment on both theories. It did so based on Mr. Thomas' failure to controvert Special Olympics' showing that its decision was based, at least in part, on a desire to avoid a repetition of the disruptive behavior it believed Mr. Thomas had engaged in when previously a member of the organization, rather than based on a desire to cause Mr. Thomas extreme emotional distress. Mr. Thomas appeals, alleging that his affidavit created a factual issue as to whether Special Olympics knew that he would suffer emotional distress when it refused to reinstate him, yet still refused to do so. He asserts that the existence of this factual issue precluded the grant of summary judgment. We disagree.

Once Special Olympics presented evidence that its decision was motivated, at least in part, by a desire other than a desire to injure Mr. Thomas, it was entitled to summary judgment on his claim of intentional infliction of emotional distress unless he provided countervailing evidence sufficient to create a factual issue as to whether Special Olympics' *sole* purpose in refusing to reinstate him was to cause him extreme emotional distress. Mr. Thomas' evidence that he believed that Special Olympics knew that he would suffer emotional distress when it refused to let him participate in the organization was not adequate to meet this burden. Accordingly, the trial court properly granted Special Olympics summary judgment on this theory.

Similarly, both because a necessary element of a claim for prima facie tort is proof of an actual intent to injure, that is, actual malice, and because a party cannot resort to prima facie tort merely to overcome an inability to prove one element of a nominate tort, the trial court properly granted summary judgment on Mr. Thomas' claim of prima facie tort as well. Accordingly, we affirm that ruling also.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Thomas is a person with some degree of mental retardation. For some time prior to July 1, 1993, he participated in a variety of athletic events sponsored by Special Olympics.[1] During that period, various other Special Olympics participants lodged complaints with the organization concerning Mr. Thomas' behavior at Special Olympics' events. The complaints ranged from claims that he exhibited poor sportsmanship, lacked social skills, and showed disrespect for coaches and other personnel, to claims that he harassed other athletes, yelled at members and participants, and placed telephone calls to family members of employees.

In response to these complaints, officials at Special Olympics issued written warnings to Mr. Thomas on a number of occasions in 1991 and 1992. In those warnings it advised him that, while he was welcome to continue participating in Special Olympics so long as his behavior was acceptable, he would no longer be permitted to participate if he failed to control his behavior. Eventually, Special Olympics officials decided that Mr. Thomas should not be permitted to remain in the program if his behavior was as suggested in the complaints made about him, and they informed him that they would be conducting an investigation into these allegations.

After learning of the investigation, Mr. Thomas wrote Special Olympics a letter, dated June 1, 1993, which stated in part:

"I'm going to save you the time of doing a(sic) investigation and suspending me I QUIT i(sic) want nothing to do with your office or any of it's (sic) program it has." On June 23, 1993, Ms. Jan Present, Area IV Director for Kansas City Metro Special Olympics, sent copies of correspondence with Mr. Thomas to Ms. Susan McDermott, the Director of Field Services for Missouri Special Olympics, and wrote that, based on these complaints and on Mr. Thomas' past behavior, she believed that Mr. Thomas should not be permitted to further participate in the KC Metro Special Olympics Program:

> Enclosed please find copies of the letters from Jackson County Parks and Recreation, to Rick Thomas and his response back to them. I think my feelings about Mr. Thomas are pretty clear, in regards to finding another agency in the KC Metro program to "pawn" him off to.
>
> Mr. Thomas has now been through three programs, including Jackson County Parks and Recreation in Area IV and has been removed from all three programs because of disciplinary problems. I do not feel it is fair for another agency to have to accept and put up with Mr. Thomas' behavioral problems and misconduct. As well, in his response to the letter he received from Jackson County Parks and Rec he denies "calling family members of their office." According to Darryl Corwin, Rick did indeed call and harass an employee's family member. I would put a lot more credibility in Darryl Corwin's word than Rick Thomas.
>
> My feelings are that Mr. Thomas should not be allowed to continue to participate in the KC Metro Special Olympics program. Please give me a call so we may discuss the situation so that I may respond to him in a timely manner.

Following this series of letters between Mr. Thomas, local, and regional Special Olympics officials, Ms. McDermott sent

---

1. Special Olympics Missouri, Inc. is a not-for-profit organization that sponsors and organizes sporting events in the Olympic tradition for mentally retarded children and adults.

Mr. Thomas a letter on July 1, 1993 stating that he could no longer participate in Special Olympics. That letter showed that a copy of it had been sent to the new Executive Director of Missouri Special Olympics, Mark Musso. Mr. Thomas requested that the accrediting organization for Special Olympics, Special Olympics International, review the decision. While this request was under consideration, Mr. Musso received a letter from the parents of a disabled girl participating in Special Olympics, complaining that Mr. Thomas had engaged in inappropriate and harassing behavior toward their daughter and that they and other persons participating in Special Olympics' events feared his behavior.

In a letter dated January 7, 1994, Special Olympics International informed Mr. Thomas that it supported the Missouri Chapter's decision, stating that, in addition to having the right to exclude him, Special Olympics Missouri was prudent in doing so. For more than two years, Mr. Thomas did nothing further to contest Special Olympics' decision not to allow him to continue being involved in its activities, and he does not allege in this lawsuit that the decision to terminate his involvement in 1993 was tortious or unwarranted. In September 1996, however, Mr. Thomas sent Special Olympics a letter requesting that he be reinstated as a participating member of the organization. On November 26, 1996, Mr. Tim Cox, Chair of Special Olympics Missouri's Board of Directors, denied this request on the basis that it was aware of the reasons that Mr. Musso and his staff had barred Mr. Thomas from participating in Special Olympics activities and it stood by that decision:

> Your case, as all cases of eligibility, are the responsibility of the staff. Mr. Musso and his staff have kept the Board aware of the particulars of your situation. The MSO Board fully supports the decisions of the staff.

> As you are aware, Special Olympics International has also agreed with the response of our staff.

> Therefore, we stand by the decision that you are no longer eligible for Special Olympics.

It is this November 26, 1996 letter denying reinstatement that Mr. Thomas alleges was motivated by a desire to injure him. On December 16, 1998, Mr. Thomas filed a lawsuit against Special Olympics for damages, claiming it intentionally inflicted emotional distress upon him by deciding not to reinstate him in its program. In the alternative, Mr. Thomas sought damages for prima face tort based on the same conduct. Following discovery, Special Olympics moved for summary judgment based on facts stated in an affidavit provided by Mr. Mark Musso, then President of Special Olympics Missouri; based on copies of internal correspondence of the Special Olympics organization and correspondence between it and Mr. Thomas; and based on Mr. Thomas' answers to certain of Special Olympics' interrogatories. After considering this evidence and Mr. Thomas' opposing affidavit and argument, in which he asserted that Special Olympics knew its actions would cause him emotional distress but took those actions anyway, the trial court sustained Special Olympics' motion for summary judgment on both counts. This appeal followed.

## II. STANDARD OF REVIEW

Because our review of a grant of summary judgment is *de novo*, we apply the same criteria as did the trial court in order to determine whether the motion should have been granted. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In doing so, we give no deference to the trial court's ruling. *Id.*

To be entitled to summary judgment under Rule 74.04(c), a defending party need not controvert each element of the non-movant's claim. Instead, the movant

may negate the non-movant's claim in one of three ways:

by showing (1) facts that negate *any one* of the claimant's element[']s facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381. (emphasis in original).

Once this burden has been met, the non-movant's *"only* recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.* (emphasis in original). Thus, the non-movant cannot rest on his or her pleadings to survive summary judgment once the movant had made a prima facie case. *Id.*

Further, in reviewing the record on appeal, *ITT* instructs that the record is viewed "in the light most favorable to the non-movant" [which] means that the movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted, and:

Similarly, the rule that the non-movant is "given the benefit of all reasonable inferences" means that if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails.

*Id.* at 382. Finally, *ITT* explains that:

if there is no contradiction and the movant has shown a right to judgment as a matter of law, the non-movant must create a genuine dispute by supplementing the record with competent materials that establish a plausible, but contradictory, version of at least one of the movant's essential facts.

*Id.*

## III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Mr. Thomas claims that the court erred in granting summary judgment in favor of Special Olympics on his claim of intentional infliction of emotional distress because the facts alleged in his Petition, as supported by his affidavit offered in opposition to Special Olympics' motion, establish a prima facie case for intentional infliction of emotional distress. We disagree.

■ The theory of intentional infliction of emotional distress has been developed through the courts in order to permit recovery in cases in which defendant has committed "extreme and outrageous conduct" causing "severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997). Not just any wrongful conduct is a sufficient predicate for the tort. Rather, the conduct "must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* And, importantly here, it is an essential element of the tort that "[t]he conduct must be 'intended *only* to cause extreme emotional distress to the victim.'" *Id.* (emphasis added) (*quoting, K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc 1996)). *Accord, Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo.App. W.D.1998). The tort thus has been held to have the following elements:

(1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme or outrageous; and (3) the conduct must be the cause (4) of extreme emotional distress. *Boes v. Deschu*, 768 S.W.2d 205, 207 (Mo.App. 1989).

*Hyatt v. Trans World Airlines, Inc.*, 943 S.W.2d 292, 297 (Mo.App. E.D.1997).

Special Olympics' motion for summary judgment and supporting papers noted that Mr. Thomas had not even alleged in his Petition that the *sole* purpose of its conduct was to cause him emotional distress, much less that the distress was extreme or the conduct that caused it was outrageous in character or extreme in degree. Rather, he alleged only that, "the defendant knew that the plaintiff placed great value on his participation and membership in the defendant organization," and, therefore, that "the actions of the defendant were intended to inflict emotional distress on plaintiff and they did inflict emotional distress on plaintiff to the extent that the plaintiff suffered medically significant physical ailment ..."

Special Olympics argued in its motion that these types of allegations are not sufficient to support a claim for intentional infliction of emotional distress, as they do not assert that its conduct was outrageous or that its sole purpose was to cause Mr. Thomas extreme emotional distress. Further, Special Olympics noted, the discovery conducted by the parties demonstrated as a matter of law that it denied Mr. Thomas reinstatement for reasons other than a desire to cause him extreme emotional distress. In support, it attached an affidavit of Mr. Mark Musso, then President of Special Olympics Missouri, Inc.

As noted above, Mr. Musso was personally involved in the decision not to allow Mr. Thomas to continue in Special Olympics in 1993, and the November 1996 letter stating that Special Olympics Missouri would not reinstate Mr. Thomas noted that the organization had made its decision in consultation with Mr. Musso and his staff. Mr. Musso stated in his affidavit that it was based on both his personal knowledge and on Special Olympics' business records. He swore that the decision not to reinstate Mr. Thomas was made based on the organization's belief that his continued participation would be disruptive of Special Olympics programs and would threaten the welfare of other participants, as follows:

6. Based upon the information received, Defendant honestly believed that Plaintiff's behavior and conduct was disruptive to the programs and purposes of Special Olympics and that the welfare of the Special Olympics athletes, coaches, volunteers and family members and protection of them from the same required that Plaintiff be permanently excluded from further participation in Special Olympics Events sponsored by Defendant and its local affiliates.

Defendant's sole motivation for permanently excluding Plaintiff from participating in Special Olympics Events sponsored by Defendant and its affiliates was to prevent disruption to its programs and events and to protect participants, coaches, volunteers and families from the same. Defendant, in precluding Plaintiff's participation in such Special Olympics Events, did not intend or desire to cause Plaintiff any emotional distress or injury whatsoever.

Copies of the correspondence and memoranda on which Mr. Musso said he and the others relied in making their decision were attached to the affidavit.

Special Olympics further supported its motion with a copy of Mr. Thomas' answers to interrogatories that had asked him to identify the basis on which he alleged that Special Olympics' intent in denying reinstatement was to cause him harm. His interrogatory answers said that he relied on the November 26, 1996 letter denying reinstatement, and further that since everyone knew he attached a great deal of significance to his membership in the Special Olympics, and would be severely emotionally upset by being excluded from it, they must have intended to harm him when they excluded him.

■ "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. Because the facts set forth in Special Olympics' affidavit and other documents negated the sole intent element necessary to support Mr. Thomas' claim of intentional infliction of emotional distress, Special Olympics' motion made a prima facie showing that it was entitled to summary judgment with respect to Mr. Thomas' allegations of intentional infliction of emotional distress. *Id.* Once Special Olympics made a prima facie case, Mr. Thomas could not simply rely on his pleadings. To the contrary, his "only recourse," *id.* at 381, was to come forward with facts, not conclusions, showing that Special Olympics' conduct was so extreme and outrageous as to come within the bounds of the tort of intentional affliction of emotional distress, and as a part of this proof to show that the sole intent of Special Olympics in engaging in this conduct was to cause extreme emotional distress to Mr. Thomas. *Id.; Gibson*, 952 S.W.2d at 249.

Mr. Thomas failed to meet this burden. He asserted in a countervailing affidavit that many of the allegations and complaints made about him were untrue or exaggerated and that Special Olympics should have known this and did know how important his involvement in its programs was to him and knew it would cause him distress were he denied reinstatement. He did not deny Mr. Musso's averment, however, that the basis of Special Olympics' denial had been the many complaints it had received, or that it had indeed received such complaints, and that such complaints had been the basis of Mr. Thomas being banned from prior Special Olympics programs and had been the basis of the 1993 decision to exclude him from further participation in Special Olympics Missouri. Mr. Thomas further did not aver that the *sole* reason he was denied reinstatement was a desire to injure him, nor did he deny that the desire to avoid a repetition of these complaints and a desire to avoid the risk of harassment by Mr. Thomas was at least one of the reasons why Special Olympics denied him reinstatement. Rather, as he had in his Petition and interrogatory answers, Mr. Thomas claimed only that Special Olympics knew that its conduct would cause him emotional distress and that, as it undertook the conduct anyway, and as one is held to anticipate the reasonable and probable consequences of one's actions, Special Olympics therefore should be found to have intentionally caused him emotional distress.

■ We disagree that this allegation was sufficient to meet Mr. Thomas' burden of proof; for even if it is true, it does not negate Special Olympics' proof that a desire to cause harm to Mr. Thomas was not the *sole* motivation for its conduct. The uncontradicted evidence indicated that there was a business purpose to Special Olympics' decision also. Where a desire to cause severe emotional harm is not the sole motivation for the conduct alleged, then under *Gibson*, 952 S.W.2d at 249, and similar cases, suit cannot be brought for intentional infliction of emotional distress, even though Special Olympics might have known that its decision would cause Mr. Thomas distress. Otherwise, no group could ever turn persons down for membership, or exclude them for bad behavior, if the group was aware that this would make the persons so excluded unhappy, without being liable for the tort of intentional infliction of emotional distress. This is not the law. In order to recover under this theory, one must allege not just that the actor knew that emotional distress would result from his or her acts, but that this was the *sole* motivation for the actor's conduct. *Id.* Only in this way can the tort be kept within reasonable bounds.

■ Mr. Thomas also alleges that, even were it true that Mr. Musso's affidavit and the attached documents made a prima facie case for summary judgment when con-

sidered together with the other evidence submitted, the affidavit and attached documents must be disregarded because Mr. Musso failed to state in his affidavit that he had direct and personal knowledge of the facts contained in the documents, and failed to delineate whether his statements were based on his own knowledge or on the records Again, we disagree, and find that the trial court properly considered Mr. Musso's affidavit. Mr. Musso did not state in his affidavit that only some of his averments were based on personal knowledge and the rest were based on information and belief after a review of the records, as Mr. Thomas appears to suggest.

The affidavit states that Mr. Musso "is the President of [Special Olympics Missouri] and that this **affidavit is based upon his personal knowledge and based upon the records** of [Special Olympics Missouri] kept in the regular course of business" (emphasis added). As previously noted, the action which formed the basis for the suit was Special Olympics' refusal to reinstate Mr. Thomas in November 1996. Mr. Musso was President of Special Olympics Missouri when that decision was made. He had personal knowledge of the basis of that decision, and his affidavit makes clear that he and others made the decision after reviewing Special Olympics' records as to Mr. Thomas' prior involvement. Mr. Musso was in fact personally involved in that decision, and was personally involved in and aware of the reasons why Mr. Thomas was asked not to continue to participate in 1993, as shown by his affidavit and by the fact that he was copied on or a recipient of many of the relevant letters.

Equally importantly, however, Mr. Musso did not need to have personal knowledge of each of the facts stated in the letters in Special Olympics' files in order to rely on them in his affidavit, for he was not claiming that they were true. He was averring that he personally knew why Special Olympics made its decision not to reinstate Mr. Thomas, and that the decision was based on Special Olympics' concerns resulting from its review of the letters and other documents attached to the affidavit. He then personally averred as to his and the others' motivation in deciding against reinstatement. These were proper subjects for his affidavit, were based on his personal knowledge, and were properly considered by the court below in deciding whether to grant Special Olympics' motion for summary judgment.

For these reasons, we concur with the trial court that the uncontroverted evidence showed that it was not Special Olympics' sole intent to cause Mr. Thomas extreme emotional distress by not allowing him to be reinstated into its programs. The evidence established, rather, that Special Olympics' actions were driven at least partially by its desire to protect employees and other participants. As an organization whose purpose is to provide a broader range of activities and opportunities to mentally retarded individuals, it was reasonable that it take steps to ensure that access to and benefits of its services could be enjoyed without harassment. Mr. Thomas failed to contravene Special Olympics' showing that this was at least a partial motivation for its actions. For these reasons, the trial court properly granted summary judgment to Special Olympics on Mr. Thomas' claim of intentional infliction of emotional distress.

## IV. PRIMA FACIE TORT

Mr. Thomas also asserts a claim of prima facie tort against Special Olympics based on the same conduct which he alleged allowed him to assert that Special Olympics committed the tort of intentional infliction of emotional distress against him. A claim of prima facie tort requires proof of: (1) an intentional lawful act by the defendant, (2) defendant's intent to injure the plaintiff, (3) injury to the plaintiff, and (4) an absence of, or insufficient justification for defendant's act. *Woolsey v. Bank of Versailles*, 951 S.W.2d 662, 668 (Mo. App. W.D.1997). In addition, as we have

recognized in prior cases, the nature of this tort is sufficiently ambiguous and open-ended that a plaintiff should not be permitted to sue under it for conduct which is encompassed within an existing, nominate tort. *Id.* And, as the Eastern District of this Court explained in *Kiphart v. Community Federal Sav. & Loan Ass'n,* 729 S.W.2d 510 (Mo.App. E.D.1987), "[t]he availability of a nominate tort does not mean that the plaintiff may be successful and actually recover damages under that theory, but means that the prima facie tort doctrine cannot be utilized when such a tort is available." *Id.* at 517–18. In other words, this doctrine cannot be used to avoid the inability to prove one element of a nominate tort that is otherwise applicable under the facts.

For example, in *Woolsey,* plaintiffs sued under two theories: wrongful foreclosure and prima facie tort. The conduct which they alleged supported their wrongful foreclosure claim was substantially identical to the conduct they alleged supported their prima facie tort claim. Plaintiffs lost on their theory of wrongful foreclosure, and the court did not permit them to proceed on their claim of prima facie tort. On appeal, plaintiffs asserted that they should have been permitted to submit their prima facie tort claim. *Woolsey* disagreed, holding that, where, as there, the same facts underlay both theories, the doctrine of prima facie tort could not be invoked, for it "is not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories.... As such, the prima facie tort doctrine cannot be utilized when a recognized tort is otherwise available." 951 S.W.2d at 668.

We have also recognized that in order for a claim in prima facie tort to lie, plaintiff must offer proof "of an 'actual intention' to injure, not merely an intent to do the act which may result in the claimed injury." *Boatmen's Bank of Butler v. Berwald,* 752 S.W.2d 829, 833 (Mo.App. W.D. 1988). "This court has also held that a valid business reason for actions taken by a defendant, provides justification sufficient to defeat a prima facie tort claim." *Id.* Merely claiming that defendant must have been aware that its conduct would cause harm is not sufficient to meet the requirement that plaintiff prove an actual intent to injure, that is, actual malice. *See Dowd v. General Motors Acceptance Corp.,* 685 S.W.2d 868, 874 (Mo.App. W.D.1984).

Here, Mr. Thomas has asserted the same conduct by Special Olympics supports both his prima facie tort claim and his intentional infliction of emotional distress claim. "[S]ince the conduct [Mr. Thomas] assert[s] established the elements of prima facie tort is identical to that supporting [intentional infliction of emotional distress], [Mr. Thomas] could not utilize the theory of prima facie tort and the trial court did not err in rejecting [his] claim." *Woolsey,* 951 S.W.2d at 668–69. Moreover, he has not alleged actual malice, spite or ill-will on the part of Special Olympics, but only that it knew that its actions would cause him distress and must have intended the natural and probable consequences of its acts. He has thus failed to assert the requisite bad motive necessary to prove prima facie tort.

For all of these reasons, we affirm the trial court's judgment granting summary judgment to Special Olympics on plaintiff's suit for intentional infliction of emotional distress and prima facie tort.

Presiding Judge HAROLD L. LOWENSTEIN and Judge THOMAS H. NEWTON, concur.