# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2319

_____

| | | |
|---|---|---|
| Bi-Rite Petroleum, Ltd. and Denise E. Laws, | * * * | |
| Plaintiffs-Appellants, | * * | |
| vs. | * * | Appeal from the United States District Court |
| Coastal Refining & Marketing, Inc., | * * * | for the Eastern District of Missouri. |
| Defendants-Appellees. | * * | |

_____

Submitted: December 10, 2001
Filed: February 28, 2002

_____

Before LOKEN and BYE, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Bi-Rite Petroleum ("Bi-Rite") and Denise Laws appeal from a grant of summary judgment which dismissed their claims against Coastal Refining &

_____

[1] The Honorable Andrew W. Bogue, United States Senior District Judge for the District of South Dakota, sitting by designation.

Marketing ("Coastal"). In their complaint, Bi-Rite and Laws alleged Coastal had committed fraud, breach of contract, negligent infliction of emotional distress and intentional infliction of emotional distress after Coastal foreclosed upon Bi-Rite's property. The lower court[2] concluded that the Forbearance Agreement precluded the Appellants' fraud and breach of contract claims and that Laws' emotional distress claims failed for a lack of evidence. Upon careful review, this Court can find no error.

In the late 1980s, Bi-Rite consisted of struggling gas stations owned and operated by Laws. In order to revitalize the company, Bi-Rite secured a Volume Improvement Program ("VIP") loan through Coastal, its gas supplier, to modernize its properties into full convenience stations. The loan was financed through Westpac Banking Corporation ("the Bank") which secured the loan through a promissory note and a deed of trust on the stations. The agreement stated that Coastal would be used to enhance Bi-Rite's credit and in turn, Coastal would rent the properties from Bi-Rite and then sublease the properties back to Bi-Rite. The lease payments were identical to the monthly repayment obligation due to the Bank. Under its agreement with the Bank, Coastal could assume the note if Bi-Rite was in default, or the Bank could sell the note outright. The Agreement further provided that Coastal could terminate the sublease if its terms were not met, take possession of the properties, and operate the stations if default occurred.

Bi-Rite's attorney advised against entering into the VIP loan arrangement, but Laws, nonetheless, accepted the agreement. Bi-Rite immediately failed to meet its obligations under the agreement and the Bank and Coastal threatened to foreclose under the terms of the VIP loan. Bi-Rite, in turn, threatened to sue Coastal for a variety of claims. After lengthy negotiations, the parties compromised in May 1993

---

[2] The Honorable Judge Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

and signed a Forbearance Agreement. This agreement provided that Bi-Rite owed the entire $1,190,000 unpaid principal on the note, unpaid balances on gasoline purchases, conversion expenses, other contractor debts and that Bi-Rite was in default under the VIP loan and promissory note. The agreement further provided that Coastal would "forebear from accelerating the Note and proceeding with foreclosure ... for a period of twelve (12) months provided that Bi-Rite fully complies with the terms of this Agreement" and that Bi-Rite would receive approximately $100,000 to cover some of its debts. The Agreement additionally provided that, "Bi-Rite agrees that it shall at all times during the Forbearance Period diligently pursue the sale of the Property." Lastly, Bi-Rite agreed to waive any claims it had against Coastal or the Bank that were not assumed under the Forbearance Agreement.

Bi-Rite defaulted on the Forbearance Agreement by failing to sell the stations or secure the money admittedly due. After the twelve months passed, the Bank notified Coastal and Bi-Rite the note was in default. Coastal then bought the note from the Bank and foreclosed on the properties. Bi-Rite brought this action alleging a multitude of claims. The district court granted all of Coastal's motions for summary judgment.

**1.**

The Appellants first argue that the Forbearance Agreement was invalid because its acceptance was induced by fraud. It is presumed that a release is valid based upon the age-old policy of freedom of contract. Andes v. Albano, 853 S.W.2d 936, 940 (Mo. 1993). In this action, all of the agreements were freely entered into and all parties were represented by competent legal counsel. Bi-Rite's original legal counsel recommended that Bi-Rite not pursue the improvement loan, but he was fired and Bi-Rite signed the agreements against his advice. The documents themselves clearly set forth that if Bi-Rite defaulted on payments, the Bank or Coastal could foreclose. Bi-Rite knew of the risks in the over $1.1 million loan, but proceeded in the face of such

3

risks.  In fact, after the original VIP loan failed, Bi-Rite itself proposed the Forbearance Agreement in order to prevent a foreclosure.  All parties agreed and the unambiguous terms stated: (1) Bi-Rite would receive almost $100,000 and one year to raise the money owed or to sell the properties; and, (2) Coastal would not foreclose and would receive a waiver of any suit under the loan agreements.

A valid waiver supported by consideration is binding on the parties. Vogler v. United States Real Earth Enters., 907 S.W.2d 377, 381 (Mo. App. 1995).  While the waiver alone could be sufficient consideration, the nearly $100,000 paid to Bi-Rite to settle some of its debts is further valid, valuable consideration.  The Appellants urge that Coastal breached the agreement by not aiding the sale of the properties.  This claim was not plead and not raised until the motion to reconsider; therefore, it is improper. Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988).

**2.**

Laws next argues that Coastal agreed to employ Plaintiff Laws no matter what became of Bi-Rite.  This alleged oral agreement was never included in any of the written documents executed by the parties, therefore, this claim is barred by the Statute of Frauds. Sales Serv., Inc. v. Daewoo Int'l (America) Corp., 770 S.W.2d 453, 456 (Mo. App. 1989).  Additionally, there could not have been a "meeting of the minds" for this employment contract since Laws could not establish what position she was to have filled, what the time period was, or what the salary was.  Without any of these essential terms, this alleged agreement must fail. Gateway Exteriors, Inc. v. Suntide Homes, Inc., 882 S.W.2d 275, 279 (Mo. App. 1994).

**3.**

Laws' claim that the lower court erred in dismissing her negligent infliction of emotional distress is without merit.  Missouri law requires an expert establish

causation of medically diagnosable distress. <u>Soper v. Bopp</u>, 990 S.W.2d 147, 157 (Mo. App. 1999). The lower court refused to consider the declaration of expert Dr. Susan Reis due to the countless delays requested by the Plaintiff and the untimely disclosure of Reis' opinion. The barring of expert testimony is reviewed for an abuse of discretion. <u>Trost v. Trek Bicycle Corp.</u>, 162 F.3d 1004, 1008 (8th Cir. 1998). It was not an abuse of discretion to exclude this opinion in light of the Plaintiff's poor record of meeting deadlines and numerous requests for continuances. <u>Harris v. Steelweld Equip. Co.</u>, 869 F.2d 396, 400 (8th Cir. 1989). Without expert testimony, this claim is invalid under Missouri law. <u>Soper</u>, 990 S.W.2d at 157.

**4.**

The last issue is whether or not the lower court improperly found that Laws failed to state a claim for intentional infliction of emotional distress. The lower court found that Bi-Rite did not plead any facts to support this claim and failed to establish, in response to the motion for summary judgment, sufficient facts to preserve the claim. There was no testimony that Laws was targeted for outrageous conduct; that outrageous conduct took place; or even that Coastal was the sole cause of her alleged distress. <u>Thomas v. Special Olympics Mo., Inc.</u>, 31 S.W.3d 442, 447 (Mo. App. 2000). Without these essential elements, this claim is not valid. Accordingly, we affirm the judgment of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

5