## ST. PAUL HOTEL CO. v. LOHM.
### No. 14444.

United States Court of Appeals,
Eighth Circuit.

April 29, 1952.

Rehearing Denied May 21, 1952.

Linus J. Hammond, St. Paul, Minn. (Ray E. Cummins, and Cummins, Cummins, Hammond & Ames, St. Paul, Minn., on the brief), for appellant.

R. J. Leonard, St. Paul, Minn. (Pierce Butler III, and Doherty, Rumble, Butler & Mitchell, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

2.   Cf. Bowen v. United States, 5 Cir., 192 F.2d 515, 517.

WOODROUGH, Circuit Judge.

The St. Paul Hotel Company, operator of the Hotel Lowry in St. Paul, Minnesota, complains of a judgment rendered against it on jury verdict for damages for negligence causing personal injury to the plaintiff, Albert L. Lohm, while he was occupying room 741 as a paying guest of the hotel on February 14, 1950. The contention is that there was no evidence to sustain a verdict for the plaintiff and that the trial court erred in denying the motion which was made by the defendant at the close of all the evidence to direct a verdict in its favor on that ground.

The accident in which the plaintiff was injured occurred while he was alone in the room and his was the only testimony as to how it happened. His pleading was that the hotel negligently maintained a commode in the bath room attached to room 741 with a concealed defect consisting of a break in the rear portion of the porcelain bowl which rendered the lid of the commode insecure and dangerous to the user and that while plaintiff was making use of the commode the lid became unhinged by reason of the defect, throwing plaintiff to the floor with force and violence. That ordinary care on the part of defendant would have prevented the dangerous condition of the commode.

His testimony was that he had occupied the room from January 26, 1950 up to the date of his accident on February 14, 1950, not only as his living room but also for the transaction of his business as a mediator for the National Mediation Board, a government employment which involved having a number of persons in the room with him for some time on occasions. He used the toilet in the bath room and it was also available to such of his invitees as may have needed it during that period and he never observed that there was anything defective about it.

He testified that at about half past seven o'clock on the morning of February 14, 1950, he went into the bath room to take a shower bath and stepped into the drained shower well which is formed by three walls of the bath room and a little wall that rises some inches above the floor and confines the water to the drained part. He drew the shower curtain about the shower enclosure and turned the warm water on himself and remained under it for some five minutes when he got an urge to use the toilet. It was set a little way outside of the shower well with the back of it towards the wall forming the side of the shower bath farthest from the shower nozzle and in such position that one sitting on it for the intended use would have both feet in front of it and his back towards that wall. But the plaintiff said he was in haste. He did not stop to turn off the water or to dry himself off but pulled the curtain aside and attempted to seat himself sideways upon the seat of the stool. But "whether one foot was in the shower and one foot out or both in the shower or both out, I don't know".

The toilet seat, according to his testimony, was an old-fashioned round wooden one, appropriately appertured and with a lid on it, and when proceeding in haste as he described, he brought his body into contact with it, he broke it clear off the hinge by which it was attached to the porcelain so that "the toilet seat and the cover were on the floor back of the bowl", "the seat was entirely off the bowl part". "It was just down on the floor back of the toilet". "The whole seat itself was torn loose from the porcelain part of the bowl". Plaintiff said that when he contacted the seat, forcing it "to skid towards the wall", he tried to protect himself but that he did not recall what happened to him except that he remembered distinctly when his head crashed and he became unconscious. When he regained consciousness he was lying within the well of the shower with his head against the far corner, his nose bleeding profusely and his feet under the running shower. He got up and stopped the bleeding by turning the cold water on the back of his neck. After he had dressed and gone down to the cafe for his breakfast he went back to his room and called the hotel manager at about 9:20 a. m. "None knew of the accident but me up to that time at 9:30".

He gave no testimony himself to sustain his claim that there had previously been a break in the porcelain of the toilet that would have been plain to be seen and that

rendered it dangerous to use, but called witnesses who after the accident saw a place at the back of the bowl where a piece some two inches by three was missing and the remaining surface indicated to them an old break at the point where one of the hinge bolts of the seat passed through. Some slivers of porcelain were found on the floor which were evidently broken off by the force of the impact of plaintiff's body against the side of the seat. The large piece, if there was one, was not found.

█ The defendant contended at the trial and now insists that the plaintiff's own account of how he came to break the seat off of the toilet in the hotel bath room and to injure himself shows that he was subjecting the toilet to a strain for which it was not intended and so was guilty of negligence contributing to his injuries. The proven use of the toilet by the plaintiff and and those he invited to his room over the period of nineteen days without any indication of any defect in it, considered with the evidence that no notice of any such defect resulted from the hotel practice of requiring inspections and reports of any discovered defects, demonstrate that prior to the misuse of it on the 14th of February, 1950, the toilet could be and was safely used in the ordinary way for which it was designed and intended. But plaintiff's testimony precluded any inference that he was so using it when he broke the seat off of it and injured himself. He stressed that it was an old fashioned toilet seat which according to common knowledge sets down flat on the rim of the toilet bowl and is meant to hold the weight of a body pressing downwards upon it. But it is equally common knowledge that such seats hinged on the brittle porcelain parts are not meant to resist the pressure of weights thrust against them from the side as plaintiff admits he did in this instance. If, as he says, he had both or even one of his feet over the wall of the shower well, he was entirely out of position to use the toilet the way it was meant to be used, even if he proceeded deliberately instead of proceeding as he says he did, in haste and while his body was all wet from the shower.

The District Court instructed the jury without any exception taken, that "when a hotel furnishes a facility such as a toilet facility, to a guest, the law intends that the guest shall use such facility in a proper and authorized manner and the hotel cannot be expected to foresee and therefore the hotel would not be negligent, if the guest uses such toilet facility in a manner not intended."

█ The instruction correctly states the applicable law of Minnesota as it is to be deduced from its hotel statute, M.S.A. § 157.05, and the court decisions. No case has been cited from Minnesota presenting facts analogous to those at bar but there is no contention that either the statute or decisions impose the duty of an insurer of its guests upon the hotel company. It is liable for injury to a guest caused by its failure to obey the statute or to use ordinary care, but it is not deprived of the defense of contributory negligence.

█ There is testimony in the record to the effect that the plaintiff gave a much more understandable account of his accident right after it occurred. A witness testified without contradiction from plaintiff, that plaintiff then stated that he took hold of the bath curtain rod to step out of the shower well and when the rod pulled out of its fastenings he fell and struck the toilet seat. The witness said he found the curtain rod pulled out and fixed it back in place the afternoon of the accident. But on this appeal the testimony must be considered most favorably to support the judgment and we take the plaintiff's account as he gave it on the trial. We think it cannot be fairly or rationally inferred from that testimony that plaintiff was using the toilet in a usual or ordinary way, or in the way it was designed and intended to be used, when he broke the seat off of it and suffered his fall. In some degree at least his reckless haste in thrusting himself against the side of the utility, and lack of care in approaching and positioning himself in respect to it, contributed to his accident and injury. Under Minnesota law such contributory negligence barred any right to recovery by plaintiff.

The denial of defendant's motion for peremptory instruction was erroneous. Defendant's motion for judgment notwithstanding the verdict should have been sustained.

Reversed with direction to dismiss.