# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3057

_____

| | | |
|---|---|---|
| Tony McGuire, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Tarmac Environmental Co., Inc.; | * | |
| Ronald E. Heap, | * | |
| | * | Appeal from the United States |
| Defendants, | * | District Court for the |
| | * | Western District of Missouri. |
| Johnson Olowokere, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| Ganco Environmental Construction, | * | |
| Inc.; Patrick Garrett; Oil Recovery and | * | |
| Environmental Services (Nigeria) | * | |
| Limited; Tarmac Systems, Inc., | * | |
| | * | |
| Defendants, | * | |

_____

Submitted: February 14, 2002

Filed: June 7, 2002

_____

Before BYE, HEANEY and RICHARD S. ARNOLD, Circuit Judges.

_____

HEANEY, Circuit Judge.

Appellee Tony McGuire brought a cause of action against Appellant Johnson Olowokere for tortious interference with contract. A jury found in favor of McGuire and awarded punitive damages against Olowokere in the amount of $100,000. Olowokere appeals, and we affirm.

I.    Facts

We review the facts in the light most favorable to the jury verdict. Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 698 (8th Cir. 2001). McGuire and Olowokere became business acquaintances in 1996. They originally worked together on a business venture involving t-shirts, but the project was unsuccessful. Olowokere, a Nigerian citizen, later informed McGuire that he was working on a contract for Shell Nigeria. He told McGuire that he wanted to find some thermal soil remediation equipment for Oil Recovery and Environmental Services (Nigeria) Limited ("ORES"). He asked McGuire to contact potential suppliers and gave him a list of companies that handled that type of equipment. Olowokere enlisted McGuire's help because he believed American companies would respond better to an American than to a Nigerian. McGuire and Olowokere never entered into an agreement regarding McGuire's compensation, but McGuire testified that he believed that he might be paid by a party other than Olowokere.

McGuire contacted and solicited quotes from various companies. On or about April 9, 1998, McGuire contacted Tarmac Environmental Co., Inc. and received price quotes on new and used soil remediation plants. McGuire established a relationship with Ron Heap, the President of Tarmac Environmental, and they entered into a written contract by which Tarmac Environmental would give McGuire a brokerage fee, commission and/or finder's fee if McGuire located a buyer for the portable soil remediation plant quoted by the company. The fee discussed was $250,000.

The day after the contract was signed, Heap sent Olowokere a proposal that quoted prices for a new and a used portable soil remediation plant. The used plant was located in Bridgeport, Connecticut and the prices quoted were identical to those negotiated by McGuire. On June 23, 1998, Olowokere confirmed his interest in purchasing the Bridgeport plant from Tarmac Environmental and also inquired about entering into an Operations & Maintenance Agreement with Tarmac for technical support of equipment in Nigeria.

On June 24, 1998, McGuire and Olowokere attended a meeting with Heap and Pat Garrett, an employee or officer of Ganco Environmental Construction, Inc., which could provide technical support for the equipment. Although no final agreement was reached at this meeting, McGuire testified that the meeting and subsequent correspondence with Olowokere indicated that the deal would go forward. On June 29, 1998, Olowokere sent a letter to Tarmac accepting its offer to sell the used plant in Bridgeport for the offered price of $1,275,000.00, plus an additional $200,000 consulting fee, which Olowokere requested to pay to someone in Nigeria. This acceptance letter also confirmed Olowokere's desire to enter into an Operating and Maintenance Agreement with Tarmac and Ganco.

In late June or early July of 1998, Olowokere discovered that McGuire would earn a commission on the deal and became angry. On July 2, 1998, Olowokere sent a letter to Heap and Tarmac Environmental stating that McGuire was not an employee, officer, agent or partner in ORES, and had no authority to act on its behalf. Olowokere further stated that because he had gotten to know Heap personally, there was no reason to continue to use McGuire as an intermediary. Olowokere also sent a copy of this letter to McGuire, and after receiving it, McGuire called Heap. Heap informed him that he would not receive a commission on the deal, and thereafter, McGuire was excluded from further involvement in the sale of the remediation plant.

-3-

On September 17, 1998, Tarmac Systems, Inc., a sister corporation to Tarmac Environmental that had not previously been involved in the sale of the plant, entered into an agreement to buy the Bridgeport plant for $ 1,175,000.00. Later, Olowokere was involved in the indirect sale of the plant from Tarmac Systems to ORES.

McGuire brought causes of action for breach of contract against Tarmac Environmental and for tortious interference with contract against Olowokere, Tarmac Systems, and Ganco. At trial, the jury returned a verdict in favor of McGuire, finding that Tarmac Environmental breached its contract with him, and that Johnson Olowokere and Tarmac Systems tortiously interfered with McGuire's contract to receive a commission. The jury awarded McGuire $250,000 in actual damages and awarded $100,000 in punitive damages against Olowokere. After the verdict, Olowokere filed a Motion for Judgment as a Matter of Law or, in the Alternative, a Motion for a New Trial. The district court[1] denied the motions.

Olowokere now appeals, claiming that the district court erred in refusing to grant Olowokere's motion for judgment as a matter of law because: (1) the evidence was insufficient to support the jury's verdict in favor of McGuire on his claim for tortious interference with contract and (2) the evidence was insufficient to support the jury's verdict assessing punitive damages against Olowokere. Olowokere also argues that the district court erred in overruling his objection to McGuire's counsel's mention of punitive damages in his rebuttal closing argument.

II.    Discussion

We first review Olowokere's argument that there was insufficient evidence as a matter of law to support the jury's verdict on McGuire's tortious interference with

---

[1] The Honorable Nanette K. Laughrey, United States District Court for the Western District of Missouri.

contract claim against Olowokere. We review de novo a district court's denial of a motion for judgment as a matter of law. Stockmen's Livestock Mkt. v. Norwest Bank, 135 F.3d 1236, 1240 (8th Cir. 1998) (citation omitted). The jury verdict, however, must be affirmed "'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party.'" Id. at 1240-41 (quoting Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 904 (8th Cir. 1995)). "Judgment as a matter of law is appropriate only when all of the evidence points one way, and is susceptible of no reasonable inference sustaining the jury's verdict." Kipp v. Missouri Highway and Transp. Comm'n., 280 F.3d 893, 896 (8th Cir. 2002) (citation omitted).

In Missouri, a plaintiff must prove five elements to prevail upon a tortious interference with contract claim: (1) the existence of a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) the absence of justification; and (5) damages. St. Louis Convention and Visitor's Comm'n v. National Football League, 154 F.3d 851, 865 (8th Cir. 1998) (citing Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996) (en banc)). The Missouri courts essentially apply a "but-for" test of causation, asking two questions: "(1) did plaintiffs actively and affirmatively take steps to induce the breach; and if so, (2) would the contracts have been performed absent plaintiffs' interference?" Mueller v. Abdnor, 972 F.2d 931, 938 (8th Cir. 1992) (quoting Tri-Continental Leasing Co. v. Neidhardt, 540 S.W.2d 210, 216 (Mo. Ct. App.1976)).

Upon review of the record, we find that there was sufficient evidence for a reasonable jury to find that Olowokere knew about the contract between McGuire and Tarmac Environmental, and that Olowokere intended to induce Tarmac Environmental to breach the contract. There was also evidence that Olowokere's inducement was not justified and that the breach damaged McGuire. The evidence indicated that Olowokere was angry to learn about McGuire's contract with Tarmac

Environmental, and that after Olowokere learned about McGuire's commission, he wrote to Tarmac Environmental stating that there was no longer a need for Tarmac Environmental to have contact with McGuire. There was also evidence that Olowokere participated in the business deal in which Tarmac Environmental indirectly sold the remediation plant to ORES through Tarmac Systems, Inc., thereby avoiding the obligation to pay McGuire his commission. Furthermore, there is sufficient evidence to show that but for Olowokere's interference, Tarmac Systems would not have breached its contract with McGuire. Viewing all the facts in the light most favorable to McGuire, the district court did not err in refusing to grant Olowokere's motion for judgment as a matter of law.

Next we examine Olowokere's argument that the district court erred in refusing to grant judgment as a matter of law on the issue of punitive damages. Olowokere argues that McGuire did not present clear and convincing evidence that his conduct was outrageous. Under Missouri law, "'punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.'" Denesha v. Farmer's Ins. Exch., 161 F.3d 491, 503 (8th Cir. 1998) (quoting Burnett v. Griffith, 769 S.W.2d 780, 789 (Mo. 1989) (en banc)). The district court held that the evidence presented supported a reasonable inference that Olowokere and Tarmac Environmental planned to deprive McGuire of his commission and was sufficient for a reasonable jury to determine that Olowokere acted with reckless indifference to McGuire's contractual rights. We agree. Under Missouri law, once a plaintiff has made a submissible case on the issue of intentional interference with a contract, they have also made a submissible case on the issue of punitive damages. See Ross v. Holton, 640 S.W.2d 166, 174 (Mo. Ct. App. 1982) ("In the area of intentional torts a submissible punitive damages question is made for the jury once the plaintiff has presented sufficient evidence of legal malice – the intentional doing of a wrongful act without just cause or excuse . . . . This is an element of intentional interference with contract"); see also Mills v. Murray, 472 S.W.2d 6, 17-18 (Mo. Ct. App. 1971) (noting that intentional interference with a

contract is malicious in law and will support an award of punitive damages).  We therefore affirm the district court's denial of Olowokere's judgment as a matter of law on the issue of punitive damages.

Finally, we consider Olowokere's argument that the district court erred in overruling his objection to McGuire's counsel's mention of punitive damages in his rebuttal closing argument.  Trial courts are invested with broad discretion to control closing arguments, and this court will reverse only for an abuse of discretion.  United States v. Macklin, 104 F.3d 1046, 1049 (8th Cir. 1997).  Although the bulk of McGuire's attorney's argument for damages was a part of his rebuttal closing argument, damages were briefly mentioned in his initial closing, and the specific amounts he mentioned on rebuttal were also addressed in the initial argument.  Furthermore, even if the district court did err, there was no prejudice because the $100,000 awarded against Olowokere is significantly less than the $300,000 profit that McGuire's attorney claimed that Olowokere made on the sale of the remediation plant and the $3 million involved in financing the sale.  We do not believe the district court abused its discretion in this matter.

III.  Conclusion

For the reasons stated above, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.