# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2246

_____

| | |
|---|---|
| Capitol Indemnity Corporation, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the Eastern |
| | * District of Arkansas. |
| Russellville Steel Company, Inc., | * |
| Freeman Industries, Inc., H. William | * |
| Mitchener, Janet L. Mitchener, Boyd | * |
| G. Freeman, Wanda Freeman, | * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted: November 21, 2003
Filed: April 21, 2004

_____

Before MELLOY, RICHARD S. ARNOLD, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff-Appellant Capitol Indemnity Corp ("Capitol") appeals the district court's dismissal of this contract action for Capitol's failure to demonstrate diversity of citizenship. We reverse.

Capitol sued Defendants-Appellees Russellville Steel Company, et al. (collectively "Russellville"), to collect over $75,000 pursuant to a general indemnity agreement. Defendants were citizens of Arkansas. In the complaint, Capitol alleged that it was a Wisconsin corporation, but did not allege that it maintained its primary place of business somewhere outside of Arkansas. Russellville moved to dismiss under F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, claiming that Capitol failed to plead diversity jurisdiction. Capitol responded to the motions and moved for leave to amend its complaint to specifically allege that "[Capitol] is an insurance corporation organized pursuant to the laws of the State of Wisconsin, with its principal place of business in Madison, Wisconsin . . . ."

The district court granted Capitol leave to amend. In addition, the district court set forth a procedure to address the outstanding Rule 12(b)(1) motions. The district court instructed Capitol to provide proof of Wisconsin citizenship with the amended complaint. The district court further stated that Russellville would have ten days after the filing of the amended complaint to submit evidence to the contrary and that, "at that time the Court will resolve the diversity issue and, if necessary, the other issues raised in [the defendants'] motions to dismiss."

With its amended complaint, Capitol submitted a certified copy of its Wisconsin articles of incorporation as well as the affidavit of Andy L. Anderson, Senior Claims Examiner for Capitol. Mr. Anderson averred as fact that Capitol was incorporated in Wisconsin, maintained its principal place of business in Madison, Wisconsin, did not maintain a place of business in Arkansas, and conducted its business of writing insurance policies and surety bonds in Arkansas exclusively through the use of independent agents who were not employees of Capitol.

Within ten days of Capitol's filing of the amended complaint, Russellville submitted affidavits. These affidavits averred that Russellville had conducted business with Capitol for over twenty years exclusively through one particular attorney-in-fact for Capitol, Charles Allen, who maintained an office in Arkansas.

Capitol did not request an evidentiary hearing nor object to the procedure set out by the district court in the order granting leave to amend. Three weeks after Russellville submitted its affidavits, the district court ruled that Capitol failed to prove that it maintained its principal place of business in Wisconsin. The district court held that, because Capitol failed to prove that its principal place of business was somewhere other than Arkansas, Arkansas had to be considered the principal place of business. Accordingly, the district court found diversity of citizenship lacking and granted the defendants' Rule 12(b)(1) motions. The district court stated:

> The only assertion in Anderson's affidavit that somewhere other than Arkansas is Capitol's principal place of business is the bald assertion that Wisconsin is. In fact, Capitol has not submitted any proof that it writes insurance policies and surety bonds in any state other than Arkansas.
>
> It is not enough that Capitol might be able to easily prove that Wisconsin is its principal place of business; it has not done so. Neither is it enough that the Court could discover the information on its own through Capitol's website or by other means; the Court, limited to reviewing the evidence submitted by the parties, may not do so. In short, Capitol has failed to prove by a preponderance of the evidence that its principal place of business is in Wisconsin. Although diversity jurisdiction is often easily proven and frequently is a "bump in the road" on the way to more substantive and, some may believe, more interesting issues, this Court refuses to shirk its duty of protecting the jurisdiction of the federal courts.

In a motion to reconsider filed under Rule 59(e), Capitol challenged the district court's findings and, for the first time, challenged the district court's procedure for submitting evidence on the diversity issue. Because Capitol had not previously challenged the procedure, and because Capitol and the defendants all complied with the procedure without objection, the district court rejected this challenge as an impermissible attempt to raise new issues after judgment and denied Capitol's motion.

On appeal, Capitol raises two issues. First, Capitol argues that the procedure used by the district court was not a "rational mode of inquiry" and therefore failed to afford Capitol adequate due process protection. See Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) ("As no statute or rule prescribes a format for evidentiary hearings on jurisdiction, 'any rational mode of inquiry will do.'") (quoting Crawford v. United States, 796 F.2d 924, 929 (7th Cir. 1986)). Second, Capitol argues that the district court clearly erred when it determined that Capitol's principal place of business was in Arkansas.

As to the first issue, Russellville argues that the district court did not abuse its discretion when it denied Capitol's Rule 59(e) motion to reconsider. Further, Russellville argues that Capitol is entirely foreclosed from presenting its procedural challenge argument to the appellate court due the fact that Capitol did not raise this issue until the motion for reconsideration. As to the second issue, Russellville argues that Capitol's failure to provide evidence of business activities outside Arkansas mandates a finding that Arkansas is the principal place of business.

II.

The district court did not abuse its broad discretion when it denied Capitol's Rule 59(e) Motion to Reconsider. District courts enjoy broad discretion in ruling on

such motions.  See Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993) ("The District Court did not abuse its broad discretion in concluding that Concordia was improperly attempting to raise, via a motion to alter or amend, arguments that it could have raised in response to W.R. Grace's motion for summary judgment.").  We have repeatedly held that Rule 59(e) motions are not proper vehicles for raising new arguments.  See id. (". . . nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.") (quoting Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988)); Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) ("Rule 59(e) motions serve a limited function of correcting "'manifest errors of law or fact or to present newly discovered evidence.'") (citations omitted). Capitol impermissibly attempted to raise its procedural challenge for the first time in its Rule 59 motion.  We therefore affirm the district court's judgment regarding dismissal of the Rule 59(e) motion.

We find, however, that the underlying decision regarding diversity of citizenship was clear error.  See Blakemore v. Missouri Pac. R.R. Co., 789 F.2d 616, 618 (8th Cir. 1986) (applying clear error standard to a diversity of citizenship determination and stating "[a] determination of citizenship for the purpose of diversity is a mixed question of law and fact, but mainly fact.").  Capitol was not required to prove specifically that its principal place of business was in Wisconsin. Rather, to establish complete diversity of citizenship with the defendants, all that Capitol was required to prove was that it was *not* a citizen of Arkansas.  Because the evidence before the district court, and all the reasonable inferences that could be drawn from that evidence, precluded a finding that Capitol was a citizen of Arkansas, Capitol met its burden.

Diversity jurisdiction exists where the amount in controversy is greater than $75,000 and where there is complete diversity of citizenship.  28 U.S.C. § 1332(a).

Complete diversity of citizenship exists where no defendants hold citizenship in a state where any plaintiff holds citizenship. Owen Equipment & Erection v. Kroger, 437 U.S. 365, 373 (1978). For diversity purposes, a corporation may be the citizen of two states. First, a corporation is a citizen of the state in which it is incorporated. 28 U.S.C. § 1332(c)(1). Second a corporation is a citizen of the state in which it maintains its principal place of business. Id. A corporation can have only one principal place of business for the purposes of diversity citizenship. See 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed a citizen of *the State* where it has its principal place of business") (emphasis added); Gafford v. Gen. Elec. Co., 997 F.2d 150, 161 (6th Cir. 1993) ("By common sense and by law, a corporation can have only one *principal* place of business for purposes of establishing its state of citizenship."). Congress made this clear in 1958 when it expanded the definition of corporate citizenship for diversity purposes to include not only the state of incorporation, but also the state of a corporation's principal place of business:

> The Judicial Conference of the United States has recommended that the law be amended so that a corporation shall be regarded not only as a citizen of the state of its incorporation, but also as a citizen of the state in which it maintains its principal place of business. This will eliminate those corporations doing a local business with a foreign charter but will not eliminate those corporations which do business over a large number of states, such as the railroads, insurance companies, and other corporations whose businesses are not localized in one particular state. Even such a corporation, however, would be regarded as a citizen of *that one of the states* in which was located its principal place of business.

S. Rep. 85-1830, at 3102 (1958).

Here the undisputed evidence showed that Capitol was incorporated in Wisconsin and that all defendants were citizens of Arkansas. Accordingly, the only issue before the district court was whether Capitol maintained its principal place of

-6-

business in Arkansas. Because a corporation can have only one principal place of business, and because Capitol believed its principal place of business to be in Wisconsin, submission of a simple description of Capitol's activities in Wisconsin would have been the most straightforward and preferred method of responding to Russellville's jurisdictional attack. We conclude, however, that in this case, a showing that Arkansas is not Capitol's principal place of business is sufficient to establish diversity of citizenship.

The Eighth Circuit has not adopted a test for determining a corporation's "principal place of business." However, other circuits have applied three different tests. The first test, the "nerve center" or "locus of operations" test, considers the principal place of business to be the location of corporate decision-makers and the location of overall control. See Buethe v. Britt Airlines, Inc., 787 F.2d 1194, 1196 (7th Cir. 1986); Lugo-Vina v. Pueblo Intern., Inc., 574 F.2d 41, 43 (1st Cir. 1978). The second test, the "corporate activities" test, considers the principal place of business to be the location of the corporation's production and service activities. Kelly v. United States Steel Corp., 284 F.2d 850, 854 (3d Cir. 1960). The final test, the "total activity" test, is actually a hybrid of the other two. The total activity test recognizes that the nature of a corporation's activities will impact the relative importance of production activities, service activities, and corporate decision making. Accordingly , the total activity test looks at all corporate activities. See, J.A. Olson Co. v. City of Winona, Miss., 818 F.2d 401, 411 (5th Cir. 1987); Vareka Invs., N.V. v. American Inv. Props., Inc., 724 F.2d 907, 910 (11th Cir. 1984).

District courts within the Eighth Circuit have applied the most open-ended of these tests–the "total activity" test. White v. Halstead Indus., Inc., 750 F. Supp. 395, 398 (E.D. Ark. 1990); North Star Hotels Corp. v. Mid-City Hotel Assocs., 696 F. Supp. 1265, 1270 (D. Minn. 1988); Associated Petro. Producers, Inc. v. Treco 3 Rivers Energy Corp., 692 F. Supp. 1070, 1074 (E.D. Mo. 1988). The district court

in the present case purported to apply the "total activity" test. Neither party disputes the use of this test, and we find this test to be the most appropriate and least limiting of the tests other circuits have applied.

Applying the total activity test to the present case, we look first at the claims made in Capitol's affidavits. We give no weight to the direct claim that Capitol maintained its principal place of business in Wisconsin. The ultimate determination of where a corporation maintains its principal place of business is a mixed question of law and fact and not appropriate subject matter for an affidavit. We give great weight, however, to Capitol's undisputed allegations of fact where the balance of the evidence offers no grounds for rejection. In this regard, we find that Capitol, an insurance company that writes indemnity policies and surety bonds, maintained no offices in Arkansas. Further, Capitol conducted business in Arkansas only through independent sales agents. Finally, because the affiant, Senior Claims Examiner Andy L. Anderson, presumably was an employee and not an independent agent, it is clear that Capitol maintained employees and offices outside of Arkansas. Russellville disputed none of these facts, and the evidence before the district court provided no basis for rejection of these assertions. In fact, Russellville's own affidavits supported Capitol's claim that it conducted business in Arkansas solely through sales agents.

We also look to the reasonable inferences that necessarily flow from the undisputed facts. In making these inferences, we may look beyond the evidence and draw on our general knowledge of commonly known information even without a request that we take judicial notice of particular facts. See, e.g.,United States v. Fousek, 912 F.2d 979, 981 (8th Cir. 1990) ("We conclude that no such evidence was necessary, for when a person in a position of public trust . . . embezzles money from those he is bound to aid, it stands to reason that there will be some resulting loss of public confidence in that institution."); United States v. Slone, 405 F.2d 1033, 1036 (8th Cir. 1969) ("It is common knowledge that the movements of a child hardly 11

months old are unpredictable."); <u>St. Paul Hotel Co. v. Lohm</u>, 196 F.2d 233, 235 (8th Cir. 1952) ("But it is equally common knowledge that such seats hinged on the brittle porcelain parts are not meant to resist the pressure of weights thrust against them from the side as plaintiff admits he did in this instance."); <u>Waldheim Realty & Inv. Co. v. Comm'r of Internal Rev.</u>, 245 F.2d 823, 825 (8th Cir. 1957) ("It is common knowledge that the surrender value of a policy cancelled by the insured is upon a short term rate basis, and considerably less than the prorata return of the premium for the unexpired term."); <u>Noland v. Pastor</u>, 191 F.2d 1009, 1013 (8th Cir. 1951) ("That a driver going thirty miles an hour can make a swerve of more than ten inches and can sound a horn, or even apply brakes and stop within a much shorter distance than 100 feet, is a matter of such common knowledge as to be obvious.  The court must take judicial notice of it."); <u>Gardner v. Mid-Continent Grain Co.</u>, 168 F.2d 819, 821 (8th Cir.1948) ("It is a matter of common knowledge, of course, of which we may take judicial notice, that ordinary soybeans are not perishable goods and that they will not rot and spoil from being in a grain car for such a period as was here consumed in their transportation from Decatur to Kansas City.").

Even without an offer of proof, then, we may take notice of the fact that insurance companies cannot exist through sales agents alone.  Insurance companies are regulated entities that require a home office to produce the policies that agents (or employees) sell and manage the assets that stand behind the policies.  Insurance companies require accountants, actuaries, claim examiners (like the affiant, Senior Claims Examiner Andy L. Anderson), and other support personnel as well as managers and directors.  It cannot reasonably be disputed that such employees exist, and it follows from the claims in Mr. Anderson's affidavits that the offices and activities of such employees, managers, and directors were located outside of Arkansas.

-9-

With no office in Arkansas, no employees in Arkansas, and only sales agents in Arkansas, the evidence does not support an inference that Capitol's principal place of business was in Arkansas. Rather, it supports the inference that all underwriting, claims examination, asset management, and corporate governance occurred elsewhere. Although Capitol failed to demonstrate that it sold policies anywhere but Arkansas, we do not find that policy sales alone are sufficient to satisfy the total activity test and define an insurance company's principal place of business. Capitol sufficiently, albeit inefficiently, demonstrated that it was not a citizen of Arkansas.

The judgment of the district court is reversed.

COLLOTON, Circuit Judge, dissenting.

I conclude that the district court did not commit clear error in dismissing the complaint, and I respectfully dissent.

To my mind, this is a straightforward case. When plaintiff Capitol Indemnity Corporation failed even to allege a basis for federal jurisdiction in its first complaint, the district court allowed Capitol to amend its complaint, but directed it to submit sufficient evidence to demonstrate diversity of citizenship within ten days, at which point the court would resolve the matter. This is a perfectly "rational mode of inquiry" in accord with our precedents, see Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990), and the court does not contend otherwise.

In response to the district court's directive, Capitol submitted a two-page affidavit, which contained only a conclusory allegation concerning Capitol's principal place of business (on which the court properly declines to rely, ante at 7-8), and three relevant statements of fact: (1) "Capitol is incorporated in the State of Wisconsin,"

-10-

(2) "Capitol does not maintain a place of business in Arkansas," and (3) "Capitol's business of writing insurance policies and surety bonds in the State of Arkansas is conducted entirely through the use of independent agents who are not employees of Capitol." The district court concluded that the evidence presented by Capitol was insufficient to establish diversity of citizenship. I agree with that conclusion, and the court does not contend otherwise. That should end the analysis.

The court, however, proceeds to find that the district court committed clear error because it failed to "look beyond the evidence" and draw on its "general knowledge of commonly known information," ante at 8, even though Capitol never cited or argued any such "commonly known information" to the district court or to this court. The court concludes that this general knowledge is sufficient, under the newly adopted "total activities" test for determining a principal place of business, to prove that Capitol's principal place of business cannot be in Arkansas. I disagree with this analysis.

I accept, of course, the general proposition that a court may take judicial notice of certain adjudicative facts, including those "generally known within the territorial jurisdiction of the trial court." Fed.R.Evid. 201(b). But a district court is required to take judicial notice of an adjudicative fact only when "requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d). Given that Capitol never asked the district court to consider "general knowledge of commonly known information," and never supplied any necessary information in that regard, it was within the district court's discretion whether to consider such information on its own initiative, and it was not required to do so. Fed.R.Evid. 201(c); FDIC v. Houde, 90 F.3d 600, 607-08 (1st Cir. 1996). The court should not reach out for facts necessary to establish diversity jurisdiction, because "[j]udicial notice is an inappropriate device for remedying a failure of proof." Glover v. Cole, 762 F.2d 1197, 1200 n.6 (4th Cir. 1985); see also United States v. Hawkins, 76 F.3d 545, 551 (4th Cir. 1996).

-11-

Assuming for the sake of argument that the district court was required <u>sua sponte</u> to consider "general knowledge" about insurance companies, the scope of what may be judicially noticed about an insurance company is limited. The court is forced by the paltry record to "presum[e]" that Capitol's senior claims examiner (who served as an affiant in the district court) is an employee and not an independent agent, <u>ante</u> at 8, but it is entirely possible that an insurance company would use independent contractors as claims examiners. I daresay it is "commonly known" that the insurance industry in the 21st century increasingly is outsourcing such functions as claims processing and administration, underwriting, accounting, and information technology services. <u>See, e.g.</u>, Doug McPhie, <u>Thumbs up on Outsourcing</u>, CROSS CURRENTS, Summer 2002, at 12-14, 21 (recognizing growing trend in life insurance industry toward outsourcing of information technology and business processes, and citing examples of outsourced policy administration functions, such as underwriting and claims adjudication), http://www.ey.com/global/download.nsf/Belgium_E/Cross Currents_Summer_2002/$file/CrossCurrents_Summer_2002.pdf.[1] These industry

_____

[1]<u>See also</u>, <u>e.g.</u>, Chris Pryer, <u>Outsourcing to Play Larger Role Among Insurance Companies</u>, OUTSOURCING JOURNAL, January 2003 (describing outsourcing of insurance processes, including field-based services such as auditing; policy administration and billing; financial recoveries, which comprises subrogation and premium collection; and data management and regulatory reporting), <u>at</u> http://www. outsourcing-journal.com/issues/jan2003/insurance.html; William R. Pape, <u>The Fewer the Merrier</u>, INC. MAGAZINE, Dec. 1998 (reporting that in 1998, outsourcing allowed GeneraLife Insurance Company of America to employ a staff of only 13, some of them college students, to manage more than 3,000 independent insurance agents), http://www.inc.com/magazine/19981201/5420.html; Florida Dep't Ins., <u>2001 Property and Casualty Target Market Conduct Examination of DeSoto Insurance Company</u>, at 4 (March 8, 2002) (insurance company relied on third-party managing general agent to provide underwriting, production, marketing, policy issuance, premium billing and collection, premium accounting, claims adjusting, auditing, payroll issuance and various other services, while managing general agent subcontracts the policy administration and claims administration functions to third-party servicing

developments show that one cannot reliably make broad assumptions about the number and function of employees at an insurance company. Moreover, the presumed existence of certain core employees, managers, and directors does not tell us anything about where they are located, including whether they are in a single state or dispersed among different venues. While it may be possible to infer from the barebones affidavit and common knowledge that Capitol has some sort of "home office" outside Arkansas, much beyond that is left to speculation.

More problematic is the legal conclusion that "general knowledge" about insurance companies necessarily demonstrates diversity of citizenship in this case. The mere existence of a judicially noticed home office outside Arkansas, especially when the nature of such an office is speculative, does not establish that Capitol's principal place of business is outside Arkansas. The very cases cited by the court to illustrate the "total activities" test, ante at 7, demonstrate the point.

As the court observes, Capitol failed to prove that it sold insurance policies anywhere other than Arkansas. The court's authorities agree that "[w]hen virtually all of the corporate business is conducted in one state, but the headquarters and policy-making functions are conducted in another, the situs of the corporate business assumes greater importance." Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp., 692 F. Supp. 1070, 1074 (E.D. Mo. 1988). If, for example, Capitol were incorporated in Wisconsin for the purpose of selling insurance exclusively in Arkansas (a scenario that the record and the court's judicially noticed facts do not exclude), decisions applying the total activity test indicate that the company's principal place of business would be Arkansas. See id. at 1075 (where sole officers and employees, company headquarters, policy-making functions, and place of incorporation were in Missouri, but 92% of sales were in Kentucky, principal place

providers), http://www.fldfs.com/companies/pc/Exams/Desoto_030802_Rpt. Pdf.

-13-

of business was Kentucky); <u>North Star Hotels Corp. v. Mid-City Hotel Assocs.</u>, 696 F. Supp. 1265, 1270 (D. Minn. 1988) (where Texas was plaintiff's state of incorporation, residence of officers and directors, situs of bookkeeping and accounting tasks, and location of corporate offices where policy decisions were made and records were maintained, but sole source of income was hotel in Minnesota managed and operated through management agreement, principal place of business was Minnesota); <u>White v. Halstead Indus., Inc.</u>, 750 F. Supp. 395, 399 (E.D. Ark. 1990) (where company's executive offices were in North Carolina, but majority of goods, sales, and employees were associated with two plants in Arkansas, principal place of business was Arkansas); <u>Hanna Mining Co. v. Minnesota Power & Light</u>, 573 F. Supp. 1395, 1400 (D. Minn. 1983) (where company was created to hold and operate parent's interest in Minnesota mining project, principal place of business was Minnesota rather than state where executive and administrative offices were located), <u>aff'd</u>, 739 F.2d 1368 (8th Cir. 1984).  Given the paucity of evidence in the record about Capitol, even when it is augmented by the judicially noticed existence of a home office outside Arkansas, I do not find clear error in the conclusion that Capitol failed to prove diversity of citizenship.

As the district court observed, it may well be that Capitol could demonstrate easily that its principal place of business is outside Arkansas.  It should remain free to do so in other litigation.  But Capitol failed to make the requisite showing in this case, and I see no good reason to strain both the doctrine of judicial notice and the "total activities" test to create diversity jurisdiction over this lawsuit.  I would affirm the judgment of the district court, and I respectfully dissent.

_____