# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3913

_____

| | | |
|---|---|---|
| Tamko Roofing Products, Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Smith Engineering Company; Smith | * | District Court for the Western |
| Environmental Corporation; Kenneth | * | District of Missouri. |
| C. Dargatz; | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Haden Schweitzer Corporation, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: March 15, 2006
Filed: June 16, 2006

_____

Before ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Tamko Roofing Products, Inc. appeals the judgment of the district court in favor of Haden Schweitzer Corporation on Tamko's claims for tortious interference and prima facie tort, as well as the district court's refusal to pierce the corporate veil of Haden's subsidiaries, referred to collectively as "Smith," to hold

Haden liable for the judgment Tamko had obtained against them.  We affirm the judgment of the district court.[1]

## I.

This diversity action stems from a series of contracts executed in 1999 between Tamko and Smith for the sale and service of certain pollution control devices.  According to Tamko, the pollution control devices failed to perform as Smith had promised, so, in December 2000, Tamko sued Smith for fraudulent misrepresentation, breach of contract, and breach of warranty.  The case was tried to a jury, which found in favor of Tamko.  At issue in this appeal is Tamko's attempt to hold Smith's parent, Haden, liable for the actions of its subsidiary, Smith.

Smith was founded in 1925, but became a wholly-owned subsidiary of Haden in 1991.  Although Smith had been profitable in the past, by 1997 it was running short of its budget and by 1998 it had begun to lose money.  In an effort to lower the cost and increase the efficiency of Smith's pollution control devices, Smith and Haden jointly developed and patented a single can oxidizer.  During the development process, Smith acquired the oldest patent describing this type of oxidizer, and, in May 1998, sued a third party for its infringement, ultimately obtaining a $9.3 million judgment—the "Eisenmann judgment."

In spite of the companies' efforts, Smith continued to lose money, and in May 2001, Haden sold all of Smith's stock to Anguil Environmental Systems, Inc. As part of the transaction, Smith assigned the Eisenmann judgment to Haden and licensed the oxidizer technology to Haden Drysys Environmental, Ltd., another

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

subsidiary of Haden. Three months after the stock sale, Smith filed for liquidation under California insolvency proceedings. In conjunction with this filing, Smith made an assignment for the benefit of its creditors to Development Specialties, Inc., the entity appointed as trustee under the California insolvency proceedings, and ceased doing business shortly thereafter. In March 2002, Development Specialties and others brought suit against Haden seeking to have the transfer of the Eisenmann judgment to Haden set aside on the grounds that it was fraudulent. The parties ultimately reached a settlement, whereby Haden and Development Specialties each received a portion of the Eisenmann judgment.

In late 2002, Tamko filed an amended complaint in its ongoing litigation against Smith, which added claims against Haden and its president, Kenneth Dargatz. The amended complaint asked the district court to pierce Smith's corporate veil to hold its parent Haden liable as Smith's "alter ego."[2] The amended complaint also asserted claims against Haden and Dargatz directly for tortious interference and prima facie tort. The district court granted summary judgment in favor of Haden and Dargatz on Tamko's claim for tortious interference, holding that Tamko had failed to create a genuine issue of material fact that Haden or Dargatz caused Smith's breach of its contract with Tamko. The district court denied summary judgment with respect to Tamko's remaining claims against Haden and Dargatz,[3] and the case proceeded to trial.

[2]In their briefing and at argument, the parties refer to Tamko's request to pierce the corporate veil as an alter ego "claim." However, piercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not as an independent cause of action. See Grothues v. Internal Revenue Serv. (In re Grothues), 226 F.3d 334, 337-38 (5th Cir. 2000). This distinction notwithstanding, we will use the parties' proffered terminology in referring to Tamko's alter ego "claim."

[3]During the course of the trial, Tamko settled with Dargatz on its remaining claims against him.

At the close of all the evidence, the court granted judgment as a matter of law on Tamko's claim against Haden for prima facie tort, finding that there was no evidence that Tamko was damaged by the transfer of the Eisenmann judgment. The court submitted Tamko's claims against Smith to the jury, which found in favor of Tamko. In addition, the district court sought an advisory opinion from the jury on Tamko's alter ego claim against Haden, with the understanding that the ultimate question of whether to pierce the corporate veil "would be decided in equity by the Court." Specifically, the court asked the jury whether Haden should be treated as Smith's alter ego on account of: (1) the failure to keep their funds separate, (2) the transfer of the Eisenmann judgment to Haden, or (3) the licensing of Smith's oxidizer technology to Haden Drysys Environmental. The jury answered the first and third questions in the negative, but answered the second question in favor of piercing the corporate veil, finding that "an inequitable result occurred by assigning the Eisenmann judgment to Haden."

Notwithstanding the jury's finding on the alter ego question, the district court granted judgment as a matter of law in favor of Haden. The court reasoned that the jury, "due to certain necessary evidentiary rulings during trial, had insufficient evidence before it to make an informed decision on that issue." Based on the evidence before it, the court found that Tamko had failed to overcome the presumption of the separate existence of Smith and Haden. In due course, the district court denied Tamko's motion under Federal Rule of Civil Procedure 59(e) to reconsider its decision on the alter ego claim, and this appeal followed.

## II.

Tamko argues that the district court erred by refusing to pierce Smith's corporate veil and hold Haden liable as its alter ego. We review the district court's factual findings in support of its alter ego determination for clear error, while reviewing its legal conclusions de novo. Greater Kansas City Laborers Pension

-4-

Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1054-55 (8th Cir. 1997). The parties agree that the question is governed by California law. See United States v. Scherping, 187 F.3d 796, 802 (8th Cir. 1999).

Under California law, "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538 (Cal. Ct. App. 2000). Nonetheless, in certain "narrowly defined circumstances" and "when the ends of justice so require," a court may disregard the corporate form to hold the shareholders responsible as the "alter ego" of the corporation. Mesler v. Bragg Mgmt. Co., 702 P.2d 601, 607 (Cal. 1985); Slottow v. Am. Cas. Co., 10 F.3d 1355, 1360 (9th Cir. 1993). Under California law, "[a]lter ego is an extreme remedy, sparingly used." Sonora Diamond, 83 Cal. App. 4th at 539; see also Las Palmas Assoc. v. Las Palmas Ctr Assoc., 235 Cal. App. 3d 1220, 1249 (Cal. Ct. App. 1991) ("Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution.").

Although there is no "litmus test" for judging when to hold a parent liable for the acts of its subsidiary, "[t]here are, nevertheless, two general requirements." Mesler, 702 P.2d at 606. First, the court must find a "unity of interest and ownership" between the parent and subsidiary such that their separate personalities no longer exist. Id. Second, the court must satisfy itself that if the acts are treated as those of the subsidiary alone, "an inequitable result will follow." Id. It is the plaintiff's burden to establish both elements and thereby overcome the presumption of a separate corporate existence. Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1212 (Cal. Ct. App. 1992). "The issue is one for the trier of fact and is reviewed on appeal according to the usual standards for sufficiency of the evidence to support the conclusion." Id. at 1213.

The parties focus much of their briefing on the "unity of interest and ownership" element, arguing that the factors typically considered by California courts cut either for or against the district court's finding that no such unity existed between Smith and Haden. See Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 838-40 (Cal. Ct. App. 1962) (cataloguing factors). We need not decide whether, as Tamko argues, the district court's findings with respect to these factors were clearly erroneous, since Tamko fails to present evidence from which the court could have found that "an inequitable result will follow" from the refusal to pierce Smith's corporate veil. Mesler, 702 P.2d at 607.

In seeking to establish the requisite inequitable result, Tamko claims that due to Haden's actions, Smith will be prevented from "meeting its obligations" with respect to the fraud judgment Tamko had obtained against it. However, "California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine." Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) (collecting cases). Instead, they "require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding." Cambridge Elec. Corp. v. MGA Elec., Inc., 227 F.R.D. 313, 331 (C.D. Cal. 2004) (collecting cases) (emphasis added).

Although Tamko argues on appeal that "Haden was intimately involved with Smith's fraud," the evidence it cites in support of this assertion involves Haden and Smith's joint development of the oxidizer technology in 1998, and not Smith's representations to Tamko about that technology during the 1999 contract negotiations, which form the basis of Tamko's allegations of fraud against Smith. Tamko presented no evidence at trial from which the court could conclude that Haden knew what representations Smith was making to Tamko during the parties'

negotiations, or that Haden was even aware that Smith was engaged in contract negotiations with Tamko; indeed, the evidence presented by Haden at trial suggests to the contrary. In the absence of evidence of wrongdoing or misconduct "amounting to bad faith" on the part of Haden, "the alter ego doctrine cannot be invoked." Sonora Diamond, 83 Cal. App. 4th at 539.

Nor does the advisory jury's finding that "an inequitable result occurred by assigning the Eisenmann judgment to Haden" compel a contrary result. Under California law, "[i]t is well-settled that the alter ego doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court." Dow Jones Co., Inc. v. Avenel, 151 Cal. App. 3d 144, 148-49 (Cal. Ct. App. 1984); see also Las Palmas, 235 Cal. App. 3d at 1248 (alter ego doctrine "founded on equitable principles."). Thus, as the district court properly recognized, the jury sat in an advisory capacity only, and thus the court was free to accept or reject its findings, and we review the findings of the district court for clear error as if there had been no advisory jury. Harris v. Sec'y, United States Dept. of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997) (quoting Gragg v. City of Omaha, 20 F.3d 357, 358-59 (8th Cir. 1994)); see also Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 965 (8th Cir. 2005) (stating that presence of advisory jury does not change rule of deference to district court's findings under Fed. R. Civ. P. 52(a)).

The district court chose to reject the advisory jury's finding that an inequitable result occurred with respect to the transfer of the Eisenmann judgment because the court concluded that there was insufficient evidence to support this finding. Indeed, only the court was privy to evidence that Haden had agreed to defend and indemnify Smith in four separate lawsuits, including its ongoing litigation with Tamko, as part of Haden's sale of its Smith stock to Anguil. The district court acknowledged that this obligation could constitute valuable consideration for the transfer of the Eisenmann judgment to Haden, thereby

supporting the court's finding that the transfer was not intended to wrongfully shield Smith's assets from Tamko. In light of the evidence before the court as the fact-finder in this equity action, we cannot conclude that the court's finding that Tamko failed to overcome the presumption in favor of the separate corporate existence of the parent and its subsidiary was clearly erroneous.

We also find no abuse of the district court's "broad discretion" to deny Tamko's Rule 59(e) motion for reconsideration. Capitol Indem. Corp. v. Russellville Steel Co., Inc., 367 F.3d 831, 834 (8th Cir. 2004) (standard of review). Although Tamko argues that the denial resulted from the application of an erroneous legal standard, a review of California law convinces us that the district court applied the correct two-part alter ego standard, as articulated by the California Supreme Court, Mesler, 702 P.2d at 606, and as applied by California's lower courts, see, e.g., Sonora Diamond, 83 Cal. App. 4th at 538-40; Mid-Century, 9 Cal. App. 4th at 1212-16.

Finally, we decline Tamko's invitation to remand this case for more specific findings because the district court's "cursory rationale" was insufficient to afford meaningful appellate review. It is well-established that a district court need not "make specific findings on all facts but only must formulate findings on the ultimate facts necessary to reach a decision." Allied Van Lines, Inc. v. Small Bus. Admin., 667 F.2d 751, 753 (8th Cir. 1982). Here, the district court specifically found that Tamko had failed to satisfy the "unity of interest and ownership" requirement of California alter ego law, and accordingly, had failed to overcome the presumption in favor of preserving the separate corporate identities. Because this was sufficient to afford us a clear understanding of the basis of the court's decision, there is no need for remand. The district court's judgment rejecting Tamko's alter ego claim is affirmed.

**III.**

Tamko argues that the district court erred by granting summary judgment in favor of Haden on Tamko's claim for tortious interference with a contract or business expectancy. We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). In doing so, we apply the same standard as the district court and may affirm on any grounds supported by the record. Id. (citing Bass v. SBC Communications, Inc., 418 F.3d 870, 872 (8th Cir. 2005)). Summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Tamko's tortious interference claim is governed by Missouri law, which requires a plaintiff to prove: "(1) the existence of a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) the absence of justification; and (5) damages." McGuire v. Tarmac Envtl. Co., Inc., 293 F.3d 437, 441 (8th Cir. 2002); Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. banc 1996) (citing Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 316 (Mo. banc 1993)). Liability for tortious interference "cannot be predicated upon speculation, conjecture or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis." Cmty Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 670 S.W.2d 895, 905 (Mo. Ct. App. 1984).

In granting Haden's motion for summary judgment, the district court held that Tamko had failed to generate a genuine issue of material fact as to whether Haden had caused Smith to breach its contracts with Tamko. In fixing causation,

Missouri courts apply a "but-for" test.  McGuire, 293 F.3d at 441; Fabricor, Inc. v. E.I. DuPont de Nemours & Co., 24 S.W.3d 82, 93-94 (Mo. Ct. App. 2000).  Under this test, Missouri courts ask: "(1) did [the defendant] actively and affirmatively take steps to induce the breach; and if so, (2) would the contracts have been performed absent [defedant's] interference?" Mueller v. Abdnor, 972 F.2d 931, 938 (8th Cir. 1992); Fabricor, 24 S.W.3d at 94 (quoting Cmty Title, 670 S.W.2d at 905).

Because Tamko failed to present evidence from which a reasonable juror could conclude that Haden "actively and affirmatively took steps to induce" Smith to defraud Tamko and breach the parties' contracts, the district court properly granted summary judgment to Haden.  Missouri law defines "induce" as "to move and lead (as by persuasion or influence), to inspire, call forth or bring about by influence or stimulation." Fabricor, 24 S.W.3d at 94 (quoting Merriam Webster's Collegiate Dictionary 594 (10th ed. 1994)). At the heart of Tamko's lawsuit against Smith was Smith's 1999 fraudulent misrepresentation and breach of its contracts with Tamko.  However, in seeking to establish that Haden "induced" the breach, Tamko places primary reliance on the assignment of the Eisenmann judgment and the execution of the technology licensing agreement, both of which occurred in the context of Haden's 2001 sale of Smith's stock to Anguil.  In effect, Tamko argues that Haden's 2001 actions were the driving force behind Smith's 1999 conduct, an illogical contention that the district court rejected, as do we. Accordingly, we affirm the grant of summary judgment denying Tamko's claim for tortious interference.

## IV.

Tamko argues that the district court erred by granting judgment as a matter of law in favor of Haden on Tamko's prima facie tort claim.  We review the grant of judgment as a matter of law de novo, applying the same standard as that used by

the district court and drawing all reasonable inferences in favor of the non-moving party. First Union Nat. Bank v. Benham, 423 F.3d 855, 863 (8th Cir. 2005). "Judgment as a matter of law is appropriate when 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party.'" Wash Solutions, Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 892 (8th Cir. 2005) (quoting Fed. R. Civ. P. 50(a)(1)).

As with its tortious interference claim, Missouri law governs Tamko's prima facie tort claim. Kelly v. Golden, 352 F.3d 344, 350 (8th Cir. 2003). A claim alleging a prima facie tort "is disfavored under Missouri law, particularly when a party has another remedy or other potentially submissible tort claims available." Id. (citing Rice v. Hodapp, 919 S.W.2d 240, 246 (Mo. banc 1996)); see also Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 67 n. 4 (Mo. banc 2000) ("It is difficult to find reported cases where a plaintiff actually has recovered on a prima facie tort theory."). Prima facie tort is not a "catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action." Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 315 (Mo. banc 1993). Rather, "it is a particular and limited theory of recovery" whose elements include: (1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) absence of or insufficient justification for defendant's act. Id.

In seeking to establish these elements, Tamko again relies on the transfer of the Eisenmann judgment and the execution of the technology licensing agreement in conjunction with Haden's 2001 sale of Smith's stock to Anguil. As Tamko argues, a jury could conclude from the evidence at trial that Haden was aware that one or both of these actions would negatively impact Tamko's ability to collect on its judgment against Smith. However, under Missouri law, a defendant's mere awareness that its conduct would cause harm is insufficient to prove an actual

intent to injure, as required to recover on a theory of prima facie tort. <u>Thomas v. Special Olympics of Missouri, Inc.</u>, 31 S.W.3d 442, 450 (Mo. Ct. App. 2000). Instead, the plaintiff must present evidence that the defendant undertook the acts with "specific, clear-cut, express malicious intent to injure; mere intent to do the act which results in injury is not sufficient." <u>Woolsey v. Bank of Versailles</u>, 951 S.W.2d 662, 669 (Mo. Ct. App. 1997); <u>see also</u> <u>J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp</u>., 881 S.W.2d 638, 646 (Mo. Ct. App. 1994) ("Spite or ill-will is necessary to satisfy the requisite intent."). Tamko points to nothing in the record from which a jury could conclude that Haden specifically intended to injure Tamko with the transfer of the <u>Eisenmann</u> judgment or the execution technology licensing agreement. Tamko's "burden to submit evidence on this element is a heavy one," <u>Woolsey</u>, 951 S.W.2d at 669, and its failure to do so warranted judgment as a matter of law.

## V.

We affirm the judgment of the district court.

_____

-12-